LEAVENS *vs*. BUTLER et ux.

1. In the construction of wills, the controlling rule is, that the court must, if practicable, ascertain the meaning of the testator.

2. In the exposition of a will, every part must be consulted: each word is to have its effect, if it be possible, without thwarting the general intent.

3. A codicil is a part of a will, and is to be construed with it: and may, as a context, confirm, vary, or altogether change an intention expressed in the body of the will.

4. Neither the common or statute law give to an executor *virtute officii*, a right to the possession of the testator's lands :— if they are devised, they pass by the will to the devisee, who has a right to entry and possession ; if undevised, they descend to the heir, who is entitled to possession.

5. If the real estate is wanting to pay debts, the executor may obtain an order for the sale of so much as is necessary ; and the right to sell in such a case is a naked power, and cannot be defeated by alienation or disseisin.

6. Where power is given by a will to sell lands, it does not require, in order to its validity, the co-operation of all the executors named—the power is attached to the office, and one executor, who has alone qualified, possesses all the power conferred by the will.

7. Where a testator intends that the payment of legacies shall be expedited or delayed—his intention must be followed as nearly as possible.

8. Payment of debts takes precedence of legacies, and a legacy will not, in general, be paid, where the assets will be required to pay debts.

9. But in case of a contingent debt, a legatee will be entitled to the assets, on giving security to refund,—if the debt become absolute.

Leavens *vs.* Butler et ux.

10. Where it is obvious that it will be necessary for a legatee to refund, in order to pay debts; or where the will postpones the payment of the legacy to a distant time; or if the payment would defeat the testator's intention—the legatee cannot claim it.

11. Where an executor voluntarily answers interrogatories which he could not be compelled to answer—the answers will be regarded as evidence *de bene esse.*

12. The jurisdiction of the County court, in the adjustment of the estates of deceased persons, is limited—depending upon legislative grants in its favor :—but where the County court is incompetent, the powers of chancery are adequate to the emergency.

13. Executors and administrators, are in almost every respect, considered in equity as trustees.

14. A legatee may sue in equity for the recovery of his legacy; and if a settlement of the estate be necessary, all the parties whose rights are to be effected, or from whom a discovery is desired, may be brought before the court.

15. [According to the English practice, where a will relates to lands only, it ought not to be proved in the spiritual court—but if it embraces personal property also, it ought to be proved there.]

16. [Courts of Equity in England have concurrent jurisdiction with the spiritual courts, for the recovery of personal legacies, in all cases; and in some cases, the jurisdiction of chancery is exclusive.]

17. [In the English chancery, where the civil law is followed, proceedings for the recovery of legacies may be instituted at any time after the expiration of twelve months from the testator's death.]

18. The County court cannot decree distribution of an estate against an executor, where, by so doing, the testator's intention would be defeated.

19. A legatee cannot in this State, in all cases, immediately after

the expiration of eighteen months from the grant of letters testamentary, coerce a payment of his legacy.

20. The County court has no jurisdiction over the lands of a testator, without the limits of this State.

Error to the County court of Mobile.

Proceedings against an executor.

. On the thirtieth day of March, eighteen hundred and thirty-five, Joshua B. Leavens, then of the city of Mobile, made and published his last will and testament, by which, after making an appropriate provision for his funeral, he proceeded as follows: "It is also my will, that my executors hereinafter named, should effectually, and to all intents and purposes, protect, indemnify, and save harmless all the other partners of the firm of St. John & Leavens, against any actual, or contingent liability, loss or injury, imposed upon them, or either of them, by me, in consequence of having assumed the responsibility to lend the name of the said firm of St. John & Leavens, either as drawers, endorsers or securities, for Benjamin Leavens, or the firm of C. Irby & Co.; and also, that they may be protected against any proportion of loss, which may grow out of the loan of money by me, in the name of the said firm of St. John & Leavens, to the said Benjamin Leavens, or the said firm of C. Irby & Co."

The testator then devised and bequeathed one fourth of his estate, both real and personal, to the plaintiff—an equal portion to his sister, Susan Leavens, and the rest and residue of his estate, to his daughter, Helen Naomi, to be paid to his brother Benjamin, and sister Susan, until his daughter should attain the age of majority, or should marry, in either of which events, the same was

Leavens *vs.* Butler et ux.

directed to be paid to her. And Benjamin and Susan Leavens were, by the will, appointed guardians and protectors of Helen Naomi.

On the third day of May, eighteen hundred and thirty-five, the testator declared and published a *codicil* to his will, in which he refered to, and expressly confirmed and adopted the same. And, in addition, inserted a clause, as follows: "I do hereby declare and direct, and do give full power and authority, to my said executors, or the survivor of them, and they shall have power, whenever and from time to time as they may think expedient, and according to their discretion, to bargain and sell, convey, lease, release or encumber, or otherwise dispose of, in fee or otherwise, all or any of my real estate, wherever the same may be situate, either for the purpose of paying debts, making division or distribution—or when they shall think it beneficial for any purpose to do so; in which case, the proceeds shall be distributed, kept or applied, as the property is required to be by my said will. The true intent and meaning of this codicil being fully to affirm the dispositions of my said will, and the better to enable my executors to carry it into effect, and the better to enable them to place the said property in such a situation, as may be convenient, and more beneficial and profitable—and by giving the power to sell and convey lands, to enable them the more conveniently to benefit all parties interested in the bequests thereof."

The testator appointed by his will, Benjamin Leavens and Joseph E. Sheffield, his executors; and shorty after died.

On the eighth day of July, eighteen hundred and thir-

Leavens *vs.* Butler et ux.

ty-five, the plaintiff in error, one of the executors named, produced the will and codicil, and having proved the due execution of each, and given bond, and taken the oath thereto required by law, received from the County court of Mobile, letters testamentary, authorising him to execute the same.

And afterwards, on the twenty-fourth day of February, eighteen hundred and thirty-eight, the defendants in error, exhibited their petition to the judge of the County court of Mobile, setting forth the marriage of Thomas J. Butler with Helen Naomi, the daughter of the testator,—the grant of letters testamentary to the plaintiff—the expiration of more than eighteen months since that time—the neglect of the plaintiff to settle his accounts, and make distribution of the estate.   The petition thereupon prayed, "that said executor, Benjamin Leavens, be required to make settlement as the law provides, of his executorship of said estate, and also to make distribution of the same, and to pay over and deliver to your petitioners, the one full half of the property and nett proceeds of said estate, according to the provisions of said will, and of the statutes of distribution in such cases made and' provided."

The petition concluded, by praying that citation, and all other necessary process might issue, &c.   And being verified by the petitioner, Thomas J. Butler, an order was made upon the petition, requiring the issuance of a citation, returnable on a day named in the order.—Whereupon a citation was issued, and served on the plaintiff in error, requiring him to appear before the judge of the County court of Mobile, on a day therein

Leavens *vs.* Butler et ux.

state 1, "and shew cause why a settlement of the affairs of the estate of his testator should not be made, and to render an account of his administration thereof; and further, to shew cause why distribution should not be made of said estate, under the provisions of the will, and the distributive share of the petitioners paid over to them, and further to do and receive, abide and perform whatever decree or order the court might make in the premises."

The plaintiff in error, appeared in the County court, and filed an answer on oath, professing to disclose, to some extent, the condition of the estate of his testator, and assigning reasons why the same could not be settled, and the petitioners' interest, under the will, assigned to them.

The defendants in error stated upon the record, certain exceptions to the plaintiff's answer, and exhibited a number of interrogatories, touching the affairs of the estate, and the plaintiff's administration of the same, which he severally answered on oath.

These answers denied that the debts of the testator had all been paid, and stated that Samuel St. John, junior, surviving partner of the testator, had rendered an account against his estate, amounting to one hundred and ninety-seven thousand, seven hundred and fifty dollars, eighteen cents. That the account with which the estate was charged for C. Irby & Co., as presented, amounted to forty-two thousand, eight hundred and fifty-five dollars, twenty-one cents. In addition to which, the contingent liabilities of the testator's estate, on account of C. Irby & Co. amounted to the sum of about ninety-eight thousand dollars. The plaintiff did not know what might be due

into effect his intention.    In the exposition of a will, regard is not to be had exclusively to a particular clause or clauses, but every part of it must be consulted—each word is to have its effect, if this be possible without thwarting the general intent.    The testator is not to be supposed to have used language, without having some definite meaning in view; and the rule is not to reject words, unless there cannot be a rational interpretation of them as they stand—(Ward on Legacies, 194, *et post*, and cases there cited; 18 L. Lib.; Capel et al. by their guardian vs. McMillan, and cases there cited, S. C. of Ala. June, 1838; 1 Yeates' Rep. 45, 319, 342, 432, 518; Ram on Wills, 1, 2, 31, 45, 64, 98, 100, and cases there cited; 8 L. Lib.; Cook et al. vs. Holmes, 11 Mass. Rep. 528.)

A codicil is a part of a *will*.    It is therefore to be construed with it, and may, as a context, confirm, vary, or altogether change an intention expressed in the body of the will—(Ward on Legacies, 194, Ram on Wills, 263.)

The testator declares by his will, the intention most clearly, that his debts shall be paid by his *executors*.    In addition to which, he specially directs that his executors should effectually, and to all intents and purposes, protect, indemnify, and save harmless, all the other partners of the firm of St. John & Leavens, against any actual or contingent liability, loss or injury imposed upon them, or either of them, by him, in consequence of his having assumed upon himself to lend the name of the firm of St. John & Leavens, either as drawers, endorsers or securities, for Benjamin Leavens, or the firm of C. Irby & Co. The will further provides, that the other partners of St.

stated, " and shew cause why a settlement of the affairs of the estate of his testator should not be made, and to render an account of his administration thereof; and further, to shew cause why distribution should not be made of said estate, under the provisions of the will, and the distributive share of the petitioners paid over to them, and further to do and receive, abide and perform whatever decree or order the court might make in the premises."

The plaintiff in error, appeared in the County court, and filed an answer on oath, professing to disclose, to some extent, the condition of the estate of his testator, and assigning reasons why the same could not be settled, and the petitioners' interest, under the will, assigned to them.

The defendants in error stated upon the record, certain exceptions to the plaintiff's answer, and exhibited a number of interrogatories, touching the affairs of the estate, and the plaintiff's administration of the same, which he severally answered on oath.

These answers denied that the debts of the testator had all been paid, and stated that Samuel St. John, junior, surviving partner of the testator, had rendered an account against his estate, amounting to one hundred and ninety-seven thousand, seven hundred and fifty dollars, eighteen cents. That the account with which the estate was charged for C. Irby & Co., as presented, amounted to forty-two thousand, eight hundred and fifty-five dollars, twenty-one cents. In addition to which, the contingent liabilities of the testator's estate, on account of C. Irby & Co. amounted to the sum of about ninety-eight thousand dollars. The plaintiff did not know what might be due

Leavens *vs.* Butler et ux.

into effect his intention.    In the exposition of a will, re-
gard is not to be had exclusively to a particular clause or
clauses, but every part of it must be consulted—each
word is to have its effect, if this be possible without
thwarting the general intent.    The testator is not to be
supposed to have used language, without having some
definite meaning in view ; and the rule is not to reject
words, unless there cannot be a rational interpretation
of them as they stand—(Ward on Legacies, 194, *et post*,
and cases there cited ; · 18 L. Lib. ; Capel et al. by their
guardian vs. McMillan, and cases there cited, S. C. of Ala.
June, 1833 ; 1 Yeates' Rep. 45, 319, 342, 432, 518 ;
Ram on Wills, 1, 2, 31, 45, 64, 98, 100, and cases there
cited ; 8 L. Lib.; Cook et al. vs. Holmes, 11 Mass. Rep.
528.)

A codicil is a part of a *will*.    It is therefore to be con-
strued with it, and may, as a context, confirm, vary, or
altogether change an intention expressed in the body of
the will—(Ward on Legacies, 194, Ram on Wills, 263.)

The testator declares by his will, the intention most
clearly, that his debts shall be paid by his *executors*.    In
addition to which, he specially directs that his executors
should effectually, and to all intents and purposes, pro-
tect, indemnify, and save harmless, all the other partners
of the firm of St. John & Leavens, against any actual or
contingent liability, loss or injury imposed upon them,
or either of them, by him, in consequence of his having
assumed upon himself to lend the name of the firm of
St. John & Leavens, either as drawers, endorsers or secu-
rities, for Benjamin Leavens, or the firm of C. Irby & Co.
The will further provides, that the other partners of St.

Leavens *vs*. Butler et ux.

John & Leavens, shall be protected against their proportion of loss, which may be occasioned by the loan of money by the testator, in the name of the firm of St. John & Leavens, to Benjamin Leavens, or O. Irby & Co.

And the testator, as if willing to confer the fullest power upon his *executors*, compatible with the nature of the trust, by the codicil to his will, invests them, or the survivor of them, with authority from time to time, according to their discretion, to bargain and sell, convey, lease, release or incumber all or any part of his real estate, wherever the same may be situate, either for the purpose of paying debts, making division or distribution, or when they shall think it beneficial, for any purpose to do so.

The will and codicil taken together, in addition to. making the executors trustees of the testator's estate, authorises them, without obtaining a special order of court, to sell, or otherwise dispose of the real estate of the testator, whenever, in their judgment, it may be proper. Here is a trust and a power united, both of which are more extensive than those conferred upon an executor, either by common or statute law—(Steele et al. vs. Worthington, 1 Ohio R. 358.) Neither of these sources of authority give to an executor *virtute officii*, a right to the possession of the testator's lands. If the lands are devised, they pass by the will to the devisee, who has the right of entry and possession—and if undevised, they descend to the heirs, who are entitled to the possession. If the real estate is wanted to pay the debts of the testator, the executor may obtain an order for the sale of so much as is necessary, though it be in the possession

the testator's estate, as devised and bequeathed to his daughter, Helen Naomi.

The right of the defendants, is asserted under the following statutory provisions:

"Sec. 13. Any person entitled to the distribution of an intestate's estate, may, at any time after the expiration of eighteen months from granting the letters of administration, petition the County court, setting forth his claim, whereupon it shall be the duty of said court, to grant a rule on the administrator, administratrix, or administrators, (as the case may be,) to make the distribution agreeably to law; but no administrator, administratrix, or administrators, shall be compelled to make distribution at any time, until bond and security be given by the person entitled to distribution, to refund a due proportion of any debts or demands, which may afterwards appear against the intestate, and the costs attendant on the recovery of such debt.

"Sec. 14. Any person entitled to a legacy, or any estate by will, shall be entitled to the provisions of the foregoing section, as in case of administrators: *Provided,* That nothing herein contained shall be so construed, as to compel any distributee to give bond and security as aforesaid, for his or her distribution of the estate of any intestate, after a final settlement shall have been made by the administrator or administratrix"—(Aik. Dig. 155.)

The statute, according to its letter, would require a rule to be made on an executor, to make distribution and division, but the nature of the thing required to be done, forbids that the act should receive a literal interpretation, by making the rule mandatory in its terms. It is

Leavens *vs.* Butler et ux.

obvious, that the initiatory step to be taken by the court, is nothing more than a summons to the executor, requiring him to show cause why a distribution and division should not be made conformably to the directions of the will. And so the act seems to have been understood by the County court—for the rule that issued, was a mere citation to appear and show cause.

We think that after the expiration of eighteen months from the grant of letters testamentary, the devisees and legatees are *prima facie* entitled to have set apart their respective portions of the testator's estate, as devised and bequeathed by his will, yet, that this right is absolute in all cases, cannot be admitted—*it cannot be allowed to defeat the testator's intention, as expressed in, or inferrable from, a just interpretation of his will.*

We need not consider, in the present case, in what manner the plaintiff should have shown cause against the rule. The defendants themselves, with the assent of the court, exhibited interrogatories in regard to the testator's estate, which they required the executor specifically to answer. Whether the County court possessed the authority thus to compel the executor to make a discovery on oath, does not now arise. The executor answered voluntarily, and his answers must be regarded as evidence, for the *purposes at least of this proceeding.* From these, we learn that the debts of the testator are not yet paid, and that the surviving partners of St. John & Leavens, are not saved harmless, or relieved from liability to pay money, in consequence of the testator having lent the name of the firm, in aid of the credit of C. Irby & Co.

8 P. 50

Let it be granted, that the plaintiff has been neglectful of his duties, in not having paid the debts provided for by the *will*, and yet the proceeding in the County court cannot be maintained. If the estate of the testator was wrested from the *executor*, and divided among the devisees and legatees, how could he save harmless the surviving partners of St. John & Leavens? It has been answered, that the plaintiff himself was a member of the firm of C. Irby & Co., and that the one fourth of the estate to which he is entitled, is first chargeable for the defaults of that firm. Upon the concession that this assumption is correct in law, it may be asked, how are we to know that the interest of the plaintiff will be sufficient to pay the debts of the testator's estate? The demands nominally largely exceed that proportion, and though perhaps they are to a great extent unjust, yet their amounts are unascertained, so as to have enabled the County court to say what was due.

The power to sell the lands, in order to its valid execution, does not require the co-operation of both the individuals named as executors in the will. It is attached to the office; and though the plaintiff in error has alone qualified, he possesses all the power conferred by the will in this particular—(Taylor & Morgan vs. Galloway et al. 1 Ohio Rep. 104; Lessee of Lloyd vs. Taylor, 1 Yeates' Rep. 422.)

In this view of the case, (and it is clearly authorised by the record,) would not the testator's intention most probably be defeated, if his estate was now divided between the beneficiaries under his will? His surviving partners might be sued, and recoveries had against them

for debts, which he had invested his executors with ample authority, as well as means, to pay, as soon as they were advised of their existence, and the partners be thus left to seek their reimbursement by a course of protracted litigation—(Riddle & Co. vs. Mandeville, 5 Cran. R. 330.)

The period prescribed by the civil law, and which is followed in the English court of chancery, where the will does not prescribe an earlier or later time, is to allow proceedings to be instituted for the recovery of legacies, at any time after the expiration of twelve months from the testator's death. This allowance is not, however, regarded as a positive rule, but merely intended for convenience, that the debts of the testator may be ascertained, and the executors be informed of the amount of the assets. If, therefore, the situation of the estate be such as to enable the executors to pay the legacies within the year, they are not restrained by law from doing so. Lord Redesdale held, if a case was produced, in which it was quite clear that there were no debts, the court would give the fund to the legatee, though the twelve months had not elapsed—(Pearson vs. Pearson, 1 Scho. & Lefr. Rep. 12; To S. P. Garthshore vs. Chalie, 10 Vesey's R. 13.)

But if it can be collected from the *will*, that the testator intended the payment of the legacy should be expedited or delayed, the intention of the testator must be followed as near as possible—(Ward on Legacies, 287; 2 Williams on Ex'ors, 854, 855; 1 Roper on Legacies, 579.)

*Again:*—The payment of the debts will claim precedence of the legacies, and the court will not, in general,

order legacies to be paid, where it appears that the assets will be required to pay debts—(1 Roper on Leg. 316, 579, 588; Ward on Leg. 369; 2 Williams on Ex'rs, 652, 830.)

It was at one time a much mooted question, whether an executor could retain a sufficiency of the assets to satisfy a *contingent debt*, but it is now settled, that the legatee will be entitled to it, on giving security to refund, should the debt become absolute; or he may have it paid into court for its better security—(Ward on Leg. 379, and cases cited; 2 Williams on Ex'ors, 830, 835, and cases cited.)

Thus, we learn, that a legatee is not, under all circumstances, according to the English rule, entitled to be paid his legacy immediately after the year. If it is obvious that it will be necessary for him to refund, in order to pay the debts of the estate, or if the will itself puts off the payment to a distant time; or if the payment would defeat the testator's intention, the legatee cannot claim it. In the case at bar, we have shown, that if the decree of the County court was upheld, the intent and desire of the testator to protect his surviving partners, would probably be thwarted.

It must be remembered, that the County court, in the adjustment of the estates of deceased persons, is indebted for its existence and powers to the several statutes on the subject. Its jurisdiction is, of course, limited, depending upon the extent of the legislative grants in its favor; and of consequence, cases must arise, in which it will be incompetent to administer complete justice between all parties interested. Yet, it will not follow, because this

Leavens *vs*. Butler et ux.

jurisdiction is imperfect, that a party interested in the estate of a deceased person, is without remedy to obtain his rights.     The powers of a court of chancery are ade-. quate to the emergency.

Executors and administrators, are in almost every respect, considered in equity as trustees—(Graff vs. Castleman et al. 5 Rand. R. 195; Dodson vs. Simpson, 2 Rand. R. 294; Knight vs. Yarborough, 4 Rand. R. 367; Field vs. Schieffelin, 7 Johns. R. 157; Petrie vs. Clark, 11 Serg. & Rawle's R. 377; Grasser vs. Eckart, 1 Binn. R. 575; Boudinot vs. Bradford, 2 Dall. R. 268; Wilson vs. Wilson, 3 Binn. R. 562; Wilson vs. Wilson, 9 Serg. & Rawle's R. 428; Neaves' estate, 9 Serg. & Rawle's R. 186; Willis on Trustees, 69, n. (1) 136, n (m) 138, n. (t); L. Lib.; Ram on Wills, 538, 539.)

Upon this principle, chancery exercises jurisdiction over them, by compelling an executor to apply the property of his testator to the payment of debts and legacies, according to the directions of the will, or in case of intestacy according to the statute of distributions—(1 Williams on Ex'rs 157; 2 Ibid. 239.)    Hence, a court of equity will entertain a bill for a personal legacy; or for the distribution of the intestate's personal estate, and will compel an executor or administrator, in the same manner as it does an *express trustee* to discover and set forth an account of the assets, and of his application of them. (2 Williams on Ex'rs, 1239, and cases there cited.)

An account has been decreed by the English chancery; of an intestate's personal estate, even after an account taken and distribution decreed in the spiritual court—. (Bissell vs. Axtell, 2 Vern. Rep. 47; Dulwich College vs.

Johnson, 2 Vern. R. 49; Phipps vs. Steward, 1 Atk. 285; 2 Fonb. Eq. 380, n. (b.)  And bills for the discovery of assets have been there entertained before probate, or during the litigation in regard to it, in the spiritual court.

A legatee may sue in equity for the recovery of his legacy, and if a settlement of the estate be necessary, all parties whose rights are to be affected, or from whom a discovery is desired, may be brought before the court— (2 Williams on Ex'rs, 1241; Fellows vs. Fellows, 4 Cow. R. 682; Deeks vs. Strutt, 5 T. R. 692; Ward. on Leg. 384; 2 Roper on Leg. 536.)

According to the English practice, where a *will* relates to lands only, it ought not to be proved in the spiritual court—but if it embraces personal property also, it ought to be proved there; yet the probate will not prejudice the heirs, inasmuch as it will not attest the validity of the *will*, as to the lands, nor will the examination of the witnesses in that court, be evidence in the courts of common law.   Therefore, if in the case of a *mixed will*, it be necessary to prove a devise of lands in a suit concerning it in any of the temporal courts, it is necessary to give the will itself in evidence, and for that purpose, it is usual in trials at *nisi prius*, to procure the attendance of the proper officer of the ecclesiastical court, who produces the original will from the registry, in which, after probate, it has been deposited.   When the *will* is wanted in chancery, that court will make an order upon the prerogative court, to deliver it to the registrar's office in chancery, to lie there till the court of chancery shall have done with it—(1 Williams on Executors, 215, 218; Tucker vs. Phipps, 3 Atk. R. 361.)

Leavens *vs.* Butler et ux.

The jurisdiction in equity, is in some instances concurrent with the ecclesiastical court, while in others it is exclusive. Where the bequest of a legacy involves the execution of trusts, either expressed, or by the construction or implication of the court, or where the trusts themselves are to be pointed out by the court; or where the remedy itself can only be enforced under the peculiar power of a court of chancery, as where a discovery of assets is required. In these and similar cases, equity has *exclusive jurisdiction*, and will protect it by the process of injunction—(2 Williams on Ex'rs, 1268, and cases cited; 2 Roper on Leg. 537, and cases cited.)

But it is said suits for legacies are now rarely brought in the ecclesiastical courts—legatees finding the authority of these courts incompetent to enforce a discovery of assets, were frequently driven for that purpose into equity. Which court, to prevent circuity of suit, exercised a complete jurisdiction in the matter, by enforcing the discovery, and decreeing payment of the legacies—(Cowp. R. 287; 5 Maddock's R. 357; 3 Ridg. P. C. 243.)

*Again:*—Equity, it is said, will entertain jurisdiction, where lands are devised to pay debts and make distribution, and will regard the proceeds as equitable assets—(Benson vs. Le Roy, 4 Johns. Ch. R. 654, 658, and the authorities cited in the argument of the plaintiff's counsel, 653.) And if a trustee disregards the directions of the will in the execution of a power, the authority of chancery is adequate to his removal—(Parsons et al. vs. Winslow, 16 Mass. R. 361.)

And in Elmendorf vs. Lansing, (4 Johns. Ch. R. 565,) "It is a settled principle," says Mr. Chancellor Kent, of a

court of equity, "that an executor, or other trustee, who mismanages, or puts the assets in jeopardy by his insolvency, either existing or impending, should be prevented from further interfering with the estate, and that the funds should be withdrawn from his hands. The authorities to this point are sufficiently numerous." So, the law may be regarded as settled, that " an executor is personally liable in equity for all breaches of the ordinary trusts, which in courts of equity are considered to arise from his office—(2 Williams on Ex'rs, 1104; Mucklow vs. Fuller, 4 Cond. Eng. Ch. R. 94, 95.)

Thus, we have shown that courts of equity have in England a concurrent jurisdiction with the spiritual courts, for the recovery of personal legacies in all cases—that in some cases, the jurisdiction of the former is exclusive. Whether the devisee of a defined tract of land can maintain an action for the recovery of the possession, on the ground that the will operates a conveyance in his favor—or whether, in such case, the assent of the executor is necessary to give a right of entry, we need not determine, since it is clear, that that case is unlike the present—(Ram on Wills, 3, 8; Ewer vs. Jones, 2 Salk R. 415; Willard vs. Nason, adm'r, 5 Mass. R. 240; Ram on Assets, 508, n. (a.)

Here, there is no specific devise of lands to the defendant, Helen Naomi. The plaintiff is allowed to convert the lands embraced by the will, into money, either to pay debts, to make division, or for any other purpose deemed beneficial by him for those concerned. So that if the plaintiff is allowed to proceed in the administration, controlled alone by the limitation prescribed to his discretion

by the will, there may be no lands to divide, when the business of the estate shall be brought to a close.

If the plaintiff has been neglectful in the execution of the trust—if he has been guilty of *mala fides*—if the rights of the defendants are in jeopardy—these and many other causes would furnish reasons for a court of equity to protect them by making the necessary orders. That court is also competent to bring all persons in interest before it, and make a definitive disposition of the claims of all parties.

*Further*—The decree of the County court is erroneous, in directing the division of the lands situate in other States. The County court could not exercise a jurisdiction over the estate of the testator beyond the reach of its process. The *lex rei sitæ* must determine the validity of a will of lands—(Kerr vs. the Devisees of Moon, 9 Wheaton's R. 565; McCormick vs. Sullivant, 10 Wheat. 192, 202)—and that law must be proved as a fact, where it becomes a matter of enquiry in a foreign court. Yet the County court, without requiring it to be shown whether the will conformed to the laws of Mississippi, Illinois and New York, determined that it was operative upon the real estate of the testator, situated within these States.

Letters testamentary granted in one State, will not authorise an executor to sue in his representative character, without the jurisdiction of the power by which the letters are granted—(Dixon's ex'rs vs. Ramsay's ex'rs, 3 Cranch's R. 319, 323; See also Fenwick vs. Sears, adm'r, 1 Cranch's R. 259; 1 Williams on Ex'rs, 204, and cases cited in note (1.)

8 P.                    51

Leavens *vs.* Butler et ux.

The case would be different, if lands were devised to an executor. There the executor might sue as a devisee. He would derive title from the will, without the aid of the letters—while an executor, who is a mere trustee for the purposes of the will, cannot prosecute an action, but by virtue of the letters—(Doe, Lessee of Lewis and wife vs. McFarland et al. 9 Cranch's R. 151.)

In the case before us, we have said that the plaintiff cannot claim as a devisee—that the *will* merely annexes to the *office of executor*, the power to sell the lands of the testator. Yet the County court, by its orders and decree, undertakes to divest the executor of these and vest them in others, though it does not appear that the laws of the States in which the lands are situate, recognise him as entitled to exert any authority over the real estate of his testator.

So, it has been holden, that lands lying in other States than that in which the letters testamentary are granted, cannot be regarded as assets in the latter—(Austin vs. Gage et al. 9 Mass. R. 395.)

Other points were made at the argument, and are presented by the record, which we decline considering, as those already noticed will probably lead to a decision of the rights of the parties upon their merits.

To recapitulate, we are of opinion—

First—That the County court cannot decree distribution of an estate against the executor where by so doing, the testator's intentions would be defeated.

Second—That in the present case, the decree of the County court, if sustained, would most probably defeat the testator's intent.

Leavens *vs.* Butler et ux.

Third—That a legatee cannot, *in all cases, immediately* after the expiration of eighteen months from the grant of letters testamentary, coerce a payment of his legacy.

Fourth—That the decree of the County court is erroneous, in assuming jurisdiction over the lands of the testator, without the limits of this State.

Fifth—That a court of chancery has ample power over the subject of legacies, and in such cases can administer complete justice—and in the present case, that tribunal is peculiarly appropriate for the adjustment of the rights of all interested under the will.

It remains but to add, that the decree of the County court must be reversed, and the cause remanded.

GOLDTHWAITE, J., not sitting.