# HUMES, Adm'r, vs. FARISS, Adm'r.

[BILL IN EQUITY FOR ACCOUNT, &C.]

1. *Bill in chancery to enforce agreement, &c.; what will be dismissed.*—D., in his life-time, bought land of S., and died leaving part of the purchase-money due and evidenced by promissory note; S. made title to D., but retained a vendor's lien with his note. After D.'s death, F. was appointed his administrator, and as such he obtained an order of court to sell the land. Steele then proposed to set up his lien and give notice of it to the purchaser under the sale by F. But F., fearing that this would injure his sale under the order of court, agreed in writing with S., that if S. would abandon his lien and allow the land to be sold free of the lien, then F. would appropriate so much of the purchase-money derived from the sale under the order of court, as might be necessary, for the payment of S.'s note for the purchase-money due him from D.'s estate. S. accepted this agreement of F. as the administrator of D., and abandoned his lien on the land, and they both agreed in written agreement to that effect. The land was sold free of the lien, under the order of court, by F. as the administrator of D., for a much larger amount than S.'s note; but after the sale, F. refused and failed to comply with his agreement with S.,—*Held*, 1st, that on a bill by S. against F. as the administrator of D., to compel an appropriation of a portion of said purchase-money in F.'s hands for the payment of S.'s note, the suit could not be entertained against F. in his representative character; as F. could not, in this way, bind the estate of D. by such an agreement with S.; and after the lien was abandoned, no bill could be filed to enforce it; 2d, that such an agreement between F. and S. is the personal contract of F., and not his contract as administrator of D., and can not bind the estate; 3d, that on the breach of such an agreement, F. may be sued at law, where the remedy is without uncertainty or embarrassment.

SAFFOLD, J., *(dissenting,)—Held*, that when, by agreement with the administrator of his vendee, the vendor omits to give notice of his lien at a sale of the land as the property of the decedent, under order of the probate court, in consideration of the administrator's retention of the money subject to his lien if established, a trust in his favor attaches to the money in the hands of the administrator when it can be identified.

APPEAL from the Chancery Court of Madison.
Tried before Hon. WM. SKINNER.

The facts of the case may be stated as follows:

On the first day of January, 1861, Matthew Steele, under the power vested in him as executor of the last will and testament of George Steele, deceased, sold a store-house and lot in the city of Huntsville, to John S. Dickson, for the sum of $6,500, which was to be paid in three equal installments. Two of these installments were paid, but at what time is not stated. For the remaining installment, Dickson executed a promissory note, of which the following is a copy:

"$2,166 66.          Huntsville, Ala., Jan'y 1st, 1861.

"On the first day of January, 1863, I promise to pay M. W. Steele, ex'r, or order, twenty-one hundred and sixty-six dollars and sixty-six cents, with interest from January 1st, 1861, value received.

"JOHN S. DICKSON."

Endorsed on this note was the following: "Presented, April 10th, 1867. John M. Fariss, adm'r John S. Dickson."

On the 7th of March, 1863, Steele conveyed the legal title to the house and lot to Dickson, acknowledging in the conveyance full payment of the purchase-money, but in fact retaining a vendor's lien for said note, which it is alleged is outstanding and unpaid.

Dickson died intestate in November, 1864. On the 6th day of June, 1866, letters of administration on his estate were granted by the proper court to appellee, who duly qualified, &c. Afterwards, on report of insolvency, made by appellee, said estate was, on the 17th day of July, 1867, duly declared insolvent, and appellee continued in its administration. On the 16th day of December, 1867, appellee, pursuant to a proper order of sale obtained for that purpose, sold said house and lot to W. M. Holding and Walter Fletcher for $6,005. This sale would seem to have been made for cash, though there is no positive averment on that point.

It is further alleged in the bill, that appellee Fariss, previous to the sale to Holding & Fletcher, hearing that Steele

"proposed to give notice of his vendor's lien on the store-house and lot," and fearing the effect thereof on the sale, "desired and requested" Steele "to let it be sold free from his lien, and the purchase-money thereof be substituted in place of the lot, subject to all" Steele's "lien rights and remedies for enforcing them which" Steele "had on the lot itself before the sale thereof; and in consideration of" Steele's "allowing said lot to be sold free of his lien, Fariss entered into a written obligation to retain and appropriate so much of the purchase-money as might be necessary to the payment of such balance as might be ascertained to be due on said note, and decreed as a lien by the chancery court."

This written obligation was as follows:

"The State of Alabama, Madison county. Whereas, Matthew W. Steele, executor of George Steele, deceased, holds a promissory note of which the following is a copy, viz: [Here follows a copy of said promissory note as here-inbefore set out,] "which he says was given for an install-ment of the purchase-money for a store-house and lot in the city of Huntsville, in said county, sold by him as ex-ecutor of the will of George Steele, deceased, to John S. Dickson, and for the payment of which he claims a ven-dor's lien upon said lot described in his deed of convey-ance therefor to said John S. Dickson, dated March 7th, 1863; and whereas, I, as administrator of the estate of said John S. Dickson, deceased, pursuant to an order of the probate court of said county, propose to sell said lot this day, and hearing that said M. W. Steele proposes to give notice of the lien claimed by him, and being appre-hensive of the effect of such notice on the sale, and claim-ing as such administrator to hold offsets to, or credits on, said note, and that there is nothing due on said note, and that said Steele has no lien, and requesting and desiring said M. W. Steele to let said store-house and lot be sold free from his alleged lien, and let the purchase-money be substituted in place of the lot itself, subject to all the lien rights and remedies which he had on or against the lot be-fore the sale.

"Now, therefore, in consideration of the premises, and in consideration that said M. W. Steele allows said storehouse and lot to be sold free from his claim or lien, I agree to hold and appropriate as much of the purchase-money as may be necessary to the payment of whatever balance may be ascertained to be due and decreed as a lien on said lot, or the purchase-money thereof, by the chancery court.

"JOHN M. FARISS,
"Adm'r of John S. Dickson."

The bill was filed on the 22d day of February, 1868, and against appellee, solely in his representative character as administrator of Dickson. The prayer of the bill was that an account be taken of what is due complainant on said promissory note for the purchase-money, and that so much of the proceeds of the sale by Fariss to Fletcher & Holding as may be necessary, be applied to the satisfaction of the debt, &c., and for general relief.

Pending the suit, Steele was removed, and Donegan and Humes were appointed administrators with the will annexed, and afterwards, Donegan having died, the cause proceeded in the name of Humes alone.

Fariss answered and demurred to the bill. The answer did not controvert in any material feature the statement of facts made in the bill, with the exception that it denied that any thing was due on the note, and set forth with particularity the various matters depended on as offset to the note, &c. Fariss in his answer admits that "he now has the money for which the property was sold, and if complainant shall be able to establish any lien, he (Fariss) will pay it out of that money." There was also some testimony taken by the parties, but it is not necessary to allude further to it, or to Fariss' answer, in the view which this court took of the case.

The grounds of Fariss' demurrer were—

1st. Want of equity.

2d. That it appeared from the bill that Dickson's estate was declared insolvent on the 17th day of July, 1867, and that the note sued on was not filed and verified against

said insolvent estate within nine months as required by law.

The cause was submitted for final decree on bill, answer and testimony, and the chancellor dismissed the bill, and taxed complainant with the costs.

It is now assigned as error—

1st. That the chancery court erred in dismissing the bill.

2d. In not decreeing payment of appellant's debt out of the proceeds of the sale of the house and lot.

CABANISS & WARD, for appellant.
ROBINSON & WALKER, contra.

PETERS, J.—This bill is not one to enforce a vendor's lien upon land. In this case, that has been released and abandoned, and the land has passed into the hands of innocent purchasers for a valuable consideration, who purchased the house and lot "free from" Steele's "claim or lien." This appears from the contract set out in the bill. The lien, then, is gone, so far as the land is concerned. Without the lien against the land, there can be no suit in chancery to collect the note. There is a clear and well ascertained remedy at law, if it is not barred, on the note by action of debt. When this is the case, equity will not take jurisdiction.—1 Story's Eq. § 25, *et seq.; McCullough et ux. v. Walker et ux.*, 20 Ala. R. 389; *Elliot v. Bank of Mobile*, 20 Ala. 345. There was, then, no remedy on the note in a court of equity, on the statement of facts presented in the bill. Does the contract between Steele and Fariss, which I suppose was executed some time about the date of the sale to Holding & Fletcher, to-wit, about December 16, 1867, help the case? I am constrained to say it does not. This is merely a written agreement upon certain considerations to pay a sum of money on the happening of certain events. It is not a mortgage, or a trust on the estate of Dickson. No one but Dickson himself could bind his estate by such an agreement. An administrator has no such authority. He is a trustee with limited powers.

He can neither waste the estate of the deceased, or charge it with new liabilities.—1 Williams on Ex'rs, p. 562, and notes, (Amer. ed. by Fish, 1859); *Willis' Adm'r v. Heirs of Willis*, 9 Ala. 330. The contract between Steele and Fariss did not bind the estate of Dickson, but only Fariss individually; and its breach created only a personal obligation on Fariss to pay whatever damages such breach might have occasioned. And for the collection of the debt so contracted there is an ample and unembarrassed remedy at law.—*Wade v. Pope et al.*, 44 Ala. R. 690; *Jones v. Dawson*, 19 Ala. 672.

It also appears from the record, that the bill in this case was filed after the estate of Dickson was declared insolvent. It could not, then, be filed to enforce collection of Steele's notes against the estate of Dickson, but only to enforce the lien dependent on the note. But this lien was released by the contract above set out, and the equity of the bill could not rest on this lien. It was not to follow a trust fund which had gone into the hands of Fariss as the administrator of Dickson's estate; because he could not thus create a new liability against that estate. Nor does it appear to me, that the bill is so framed as to bring the relief sought within the principle laid down in *Coopwood v. Wallace*, (12 Ala. 790). If there is any party to the agreement between Steele and Fariss entitled to relief in equity, it is Fariss, after he may have paid whatever balance there may be due on Steele's note. But that would be a novelty not less trenching upon long settled principles of equity jurisdiction than the case of *Coopwood v. Wallace*, above cited.

There are other objections to the relief sought by the bill, which arose on the answer and proofs in the court below. But as these were not really questions in the case presented by the bill, they will not be discussed until they more directly arise.

A careful examination of the whole case, as presented by the bill, satisfies me that the learned chancellor's decree is correct. It is, therefore, affirmed, with costs.

SAFFOLD, J., *(dissenting.)*—The decision of the court is rested on the proposition that a vendor of land with the lien is without equitable remedy, when by agreement with the administrator of his vendee, he omits to give notice of his lien at a sale of the property, as that of the decedent, under order of the probate court, in consideration of the retention of the purchase-money by the administrator subject to his lien, if established.

The administrator admits that he now has the money in possession. The only interest which the probate court did or could authorize the sale of, was the right which the decedent had in the land, subject to the prior incumbrances of other persons. The proceeds must be appropriated in the same manner as other assets; and neither the probate court, nor the court of chancery, has authority to direct their appropriation to the payment of the original purchase-money, in preference to other demands against the estate. *Vaughan & Hatcher v. Holmes' and West's Heirs*, 22 Ala. Rep. 593.

The lien of the complainant on the land being admitted, unless the debt had been paid, which the administrator affirmed, the latter was unwilling to prejudice the sale by notice of the lien for a large, but disputed amount. Is the administrator such a machine of the law and the probate court, that it was neither his privilege nor his duty to remove the obstacle to an advantageous sale? He could not go into equity himself, because he denied the debt, and the only inducement would have been to realize as great a sum for the estate as practicable. An unnecessary litigation of this sort would have been at his own expense. No consideration of public policy intervenes because the transaction was entirely for the benefit of the estate, and could not be otherwise. In *Vaughan v. Holmes, (supra,)* the court said that on account of the embarrassments likely to arise, it would be disposed to hold, but for former adjudications, that the probate court had no authority to sell inchoate equities. In that case the estate had not the legal title. In *Kirkman v. Benham*, (28 Ala. 501–6,) the very question

we are considering was suggested by the court without an expression of opinion.

Executors and administrators are, in almost every respect, considered in equity as trustees.—*Leavens v. Butler*, 8 Porter, 380. Where the estate is insolvent, they are the trustees of the creditors. Liens may be created on the purchase-money, due on the sale of an estate, in favor of a vendee, if it is agreed that the money shall be deposited in the hands of a third person, to be applied in discharge of prior incumbrances, to the extent of such incumbrances. Indeed, there is generally no difficulty in establishing a lien, not only on real estate, but on personal property, or on money in the hands of a third person, wherever that is a matter of agreement, at least, against the party himself, and third persons, who are volunteers, or have notice.— 2 Story's Eq. Jur. § 1231. The original vendor may proceed against the land or the purchase-money in the hands of a subsequent purchaser for value without notice, if he has not paid. This is upon the ground, that where trust money can be traced, it shall be applied to the purposes of the trust.—2 Story's Eq. Jur. § 1232. Money, or other property, delivered by one person to another, to be paid or delivered over to and for the benefit of a third person, raises an implied trust in favor of such beneficiary. And if revocable, when it is revoked a trust results in favor of the party who originally created it.—2 Story's Equity Jur. § 1196.

From these recognized principles may be deduced that the incumbrancer may enforce the trust in favor of the vendee created by the deposit of the purchase-money; and that it is the receipt of the money for the purpose specified that gives rise to the trust against the party receiving it. This being the case, as Fariss received the money subject, by his agreement, to Steele's demand, he is undoubtedly trustee for Steele of that money, unless some one else has a better right to it. The estate of Dickson can not have a better right, because the purchaser would have been informed of the lien, and graduated his bid accordingly.

The administrator did not sell simply his intestate's interest, but the entire property with a perfect title. This he was enabled to do by the agreement. The estate was not entitled to any of the money until after the superior right was satisfied. The bill does not contemplate fixing any liability on the estate in consequence of the act of the administrator, but simply an ascertainment of what belongs to it. It is necessary, because without the intervention of equity, the fund must be distributed as other assets. The estate is insolvent; the administrator did not promise to do more than to retain the fund subject to the lien to be established against the land. If there is no trust, he is responsible personally to Steele without recourse on the estate. If he is insolvent, Steele must lose his claim. There is no recourse upon his sureties. Whose rights or interests are jeoparded that these results must follow rather than a trust be decreed.

To constitute a trust, there need only be a trustee and a *cestui que trust*. And there is no difference between a trust created by the deposit of money in the first instance, and one where the money is raised by the sale or conversion of property deposited with a trustee to convert into money. As long as the trustee holds it capable of being distinguished from his own money, the trust will be presumed to exist.—*Maury v. Mason,* 8 Por. 211.

The complainant has proceeded against the administrator in his official capacity only. Perhaps it would have been better to have treated him as a trustee individually, and also to have made him a party officially to preclude the estate. But I do not know that it would. The fund is the subject of the suit, and it is indifferent into whose hands it is traced with notice of the trust. I think the decree ought to be reversed.