JONES vs. DAWSON et als.

1. Expenses properly incurred by a trustee in the execution of his duties as such are a charge or lien upon the trust estate, and the *cestuis que trust*, or their assigns, cannot compel him to convey in equity until his demands against the estate are satisfied.

2. But persons who are employed by the trustee, in and about the business of the trust property, must look to him personally for payment, and cannot proceed directly against the trust fund.

(DARGAN, C. J., dissented from the second point of this case, and adhered to the decision in Coopwood et al. v. Wallace, 12 Ala. 790.)

3. *Cestuis que trust* for life, who are in possession of the trust estate, are liable for all current expenses attending the enjoyment of the property, and such expenses constitute no charge upon the *corpus* of the trust.

ERROR to the Chancery Court of Dallas. Tried before the Hon. W. W. Mason.

THE bill alleges substantially, that Lawrence E. Dawson and Mary W. his wife, executed an ante-nuptial agreement in 1826, in the State of South Carolina where they then resided, by which the property of the wife was conveyed to trustees for the joint use and benefit of the husband and wife during their joint lives, and then for the use and benefit of the survivor during his or her life, with remainder to the issue of the marrriage. The property, however, was not to be subject to the husband's debts, and if any of his creditors attempted to subject it to the satisfaction of their debts, his interest was to cease immediately. The bill further alleges that the control of the trustees was merely nominal, and they permitted Dawson to have the entire management of the whole trust property; that in 1842 Dawson and his wife removed to Alabama, and brought the whole property with them, which they invested in a plantation in Lowndes county, and negroes and other personal property; that Dawson continued to exercise the entire control of the property, and made all contracts relating to its business; that he employed the complainant as overseer of the plantation during the years 1845, 1846 and 1847; that the trustees remained in South Carolina, and in 1847, on the application of Dawson and wife, Dawson and one Hamilton were appointed trustees in their stead by the

Jones v. Dawson et als.

Circuit Court of Lowndes county. The death of Dawson and the insolvency of Hamilton are also averred. It is insisted in the bill, either that Dawson had such an interest in the trust property under the deed as authorized him to employ persons to perform services necessary for the protection and interest of the estate, or that he was the agent of the trustees. Mrs. Dawson and her three children, the issue of the marriage, are made defendants, and the prayer of the bill is that the complainant's demand for services rendered as overseer may be declared a charge on the trust estate, and the trust property condemned for the satisfaction thereof, and for this purpose that a portion of the property may either be sold, or placed in the hands of a receiver and the rents and profits applied to its satisfaction. It is unnecessary to notice the answers or evidence, as the bill was dismissed for want of equity.

The death of Mrs. Dawson does not anywhere appear in the record, but it was admitted by the counsel who argued the case in the appellate court that she died *pendente lite.*

LAPSLEY & HUNTER, for plaintiff in error:

1. The liability of the trust property to these debts in equity must be determined by the laws of Alabama, there being no proof on that point as to the law of South Carolina.—Bender v. Reynolds, 12 Ala. 446; Ingo v. Murphy, 10 ib. 885.

2. Complainants have no remedy at law. Dawson, the husband, had no interest in the trust property subject to execution; besides, he was insolvent, without property, and so died.

3. It is clear that there was no such contracting of these debts by the husband and father, (who was the sole agent,) upon his own exclusive credit, as would preclude recourse on the trust property.—See 2 Smith's Lead. Cases, 212, m.; Ib. 296, T., and Notes of Hare & Wall. to the last case; Raymond v. Crown & Eagle Mills, 2 Metc. 319; Upton v. Gray, 2 Greenl. R. 384; Thompson v. Davenport, 9 Barn. & Cress. 78; Coopwood v. Wallace, 12 Ala. 791; Cleveland v. Walker, 11 ib. 1058.

4. Both on principle and authority, it is clear that the trust property is liable for these debts.—Clancy on Rights, &c., from p. 331 to 337; Bell on Hus. & Wife, 513 to 522; 2 Story's Eq. Jui, from 1396 to 1492; Jaques v. Methodist Church, 17 Johns. 548; Dyett v. N. A. Coal Co., 20 Wend. 570; Davis v. May

nard, 9 Mass. 242; Dunham v. Day, 15 Johns. 555; Story on
Ag. 126, § 162, and Notes; Clark's Ex'r v. Ramsoyk, 9
Cranch, 153; Greening v. Sheffield, Minor R. 276; McEldery v.
McKinzie, 2 Por. 33; Forest & Wife v. Robinson, 4 ib. 44;
Sadler v. Houston, 4 ib. 204; Hoot v. Sorell, 11 Ala. 386; Coop-
wood v. Wallace, 12 ib. 791; Cruchfield v. Haynes, 14 ib. 49;
Montandin & Co. v. Deas, 14 ib. 33; Bradford v. Greenway, 17
ib. 797; 2 Sup. U. S. Dig. 484, § 206; Bracken v. March, 4
Miss. 74.

Gayle & Evans, contra:

1. The construction and interpretation of a contract, as well
as its validity, must be governed by the law of the place where
it was made.—10 Ala. 885; 17 ib. 636. And the modification
of the common law by the judicial decisions of a sister State
may be proved by the reports of adjudicated cases, and by the
testimony of men learned in her laws.—10 ib. 885.

2. A married woman cannot charge her separate estate with
the payment of debts, even if contracted for the use of herself
and of her separate property, unless in the mode prescribed in
the settlement.—7 Paige, 9; 2 Strob. Eq. 235; 3 Eq. (S. C.) R.
455; 3 Richardson, 463; 17 Ala. 636; 12 ib. 798; 2 Story's Eq.
Ju., § 1401. The cases cited from the South Carolina Reports
are proof of themselves of the laws of that State.

3. The wife's separate estate generally is not liable for the
expenses of herself and family. The husband, if able, is bound
to support his family, and if debts are contracted by him for
himself and family, and the credit given to him, neither the sep-
arate estate of the wife, nor the remainder to the children, is lia-
ble for such debts, even though the husband prove insolvent.—2
Hill's Ch. R. 234.

4. Persons who deal with a trustee must do so on his own in-
dividual credit, and not on the credit of the trust estate. They
are the creditors of the trustee, and not of the estate.—2 Hill's
Ch. R. 234. The equity of a creditor to render a trust estate
liable for his debt is that he has advanced his money or given
his credit to effect the objects of the trusts.—Ib.

5. The terms of the deed vest the use in the husband during
coverture.—Bender v. Reynolds, 12 Ala. 446; Ib. 42; Ib. 630.

6. Each estate, or term in the property, must bear its own

charges.—1 Hill's Ch. R. 232. Mrs. Dawson has died since the institution of this suit, and the property has passed under the deed to her children.

CHILTON, J.—We may concede, for the purposes of this decision, that Col. Dawson was the agent of the trustees to take charge of this property, after its removal to this State from South Carolina, and that Mrs. Dawson had bound herself for the payment of the demand due to the plaintiff in error, as wages for overseeing the property for three years, under the contract of employment entered into between him and Dawson; and yet we are of opinion that under the circumstances of this case, as presented by the record, the plaintiff in error is not entitled to the relief which he seeks.

The bill prays that relief may be granted from the *corpus* of the trust; that the property be hired out, or enough of it sold to satisfy the plaintiff's demand. Without stopping to inquire whether the services rendered by the plaintiff in error would, if rendered by the trustees themselves, have constituted a valid charge in their favor against the property, let us inquire, upon the hypothesis that it would, whether the employment by the trustees could confer upon the plaintiff a right to go into a court of equity for satisfaction out of the trust fund. This is a highly important question, and although we do not conceive it one of any difficulty, we have, nevertheless, given it a very mature consideration, both as to the principle upon which it turns, and the authorities in support of the view we have felt constrained to take of it.

We may safely lay it down as the general rule, that expenses properly incurred by a trustee in the execution of his office as such, are treated by the court as a charge or lien upon the estate, and the *cestuis que trust*, or their assigns, cannot compel the trustee to convey in equity without a previous satisfaction of all the trustee's just demands. Does this equitable right extend to the agents of the trustees? In the event of the death or insolvency of such trustee, can those employed by him go immediately upon the trust fund for payment?

In Worrall v. Harford, 8 Ves. 4, the question now under consideration appears for the first, and, so far as I have been enabled to discover, the only time directly presented to the English

Court of Chancery. That was a bill by a solicitor, claiming 80*l.* 9s. 3d., for a balance due to him for services rendered as such, in the matter of the trust estate upon the retainer of the trustees. The plaintiff insisted that his demand should not be considered a simple contract debt, as by the deed creating the trust it was provided, that the trustees should, out of the monies to come to their hands, pay and discharge the expenses of the commission of bankruptcy which was sued out, and all costs and charges of the deed, and also all other incidental charges and expenses relating to the execution of the trusts thereof; and that the trustees should pay and re-imburse themselves all their costs and charges relative thereto; and that therefore his demand ought to be considered as a specialty debt; and that he had a lien on the trust estate for his costs and charges. The bill further charged, that one of the trustees had died, the others had never made a final settlement and dividend of the trust fund, and had refused to pay the plaintiff. The plaintiff prayed to be declared a creditor under the trust deed, for the amount of his bills of fees, and for an account of the trust fund in the hands of the trustees, and that they be decreed to pay the sum demanded to the plaintiff. It was admitted by the counsel on both sides, that this was the first instance of an attempt to assert such an equity. The Lord Chancellor, (Eldon,) after stating that it was admitted that the bill was a perfect novelty, and that it was implied in every instrument creating a trust, that the trustee should be re-imbursed all charges and expenses incurred in the execution of the trust, proceeded to remark, "That it would be strange from that implication to conclude that the persons employed by them are therefore creditors of the trust fund. I doubt very much," says he, "and desire not to be understood to admit, that, even if the trustees are charged not to be solvent, those persons may come upon the trust fund." He concludes by saying, that it did not follow because the trustees were indemnified by the deed from the charges and expenses, that the persons having a personal demand against them for those charges and expenses should be creditors upon the fund; but that such a determination would be most mischievous. This case seems to be regarded by the elementary writers as settling the law upon this point. Mr. Lewin says, "Although the trustees themselves are creditors upon the trust fund for the amount of their expen-

Jones v. Dawson et als.

ses, the persons who are employed by them as solicitors, survey-ors, &c., have no such lien, except it may be in some special case."—Lewin on Trusts & Trustees, 454-5. The only case cited by the author as an exception to the settled rule, is Lawless v. Shaw, Lloyd & Goold, 154. In that case, however, the testator by his will expressed his particular desire that the plaintiff should be *continued* by his executors and the person who was to be entitled to the perception of the rents and profits of certain real estate, in the receipt and management thereof, and that they should employ and retain him in the receipt, agency and management of all such other lands as should be purchased in pursuance of the provisions of the will, at the usual fees allowed to agents, said Lawless having acted for the testator in that capacity from the time the estate was acquired by him. So that it is manifest, in that case it became a grave question whether Lawless was not *entitled* to such agency and the consequent fees under the will, which of course would have given him a right to proceed against the fund for compensation, instead of looking to the trus-tees. The Lord Chancellor of Ireland (Plunket) at first decided that this constituted but a recommendation for the continuance or employment of Lawless, and being precatory, conferred no right upon him, except at the pleasure of the party recommended to employ him.—Lloyd & Gr., 165, N. Upon a re-hearing, Lord Chancellor Sugden made a different decree, (Ib. 170,) but the House of Lords reversed the latter, and decreed in accord-ance with the views of Lord Plunket.—5 Clark & Finn. 129. So that this case could hardly be regarded as an exception to the rule.

Mr. Lewin, (p. 455,) upon the authority of Lord Eldon, in Worrall v. Harford, *supra*, asserts the proposition broadly, that although there be an express declaration by the settler, *that the trustee shall in the first place pay the expenses of the trust*, and although the trustees themselves be charged to be insolvent, the agent or solicitor of the trustee has no equity as against the trust fund, and that it would be a mischievous principle to hold that every person, with whom the trustees had incurred a just and fair demand, might sue the trustees and come for an account of the whole administration.

Speaking of the lien which the trustee has for expenses in-curred upon the trust estate in their hands, Mr. Hill, in his work

Jones v. Dawson et als.

on Trustees, (p. 567,) says, "This privilege does not in general extend to solicitors or other persons employed by the trustees; and such persons will be confined to their personal remedy against the trustee by whom they were employed." It appears, however, that any part of the estate which may be actually realized or recovered by the suit in which the solicitor was employed, will be subject to his lien for the costs of the suit.—See also, 10 En. Ch. R. 454; Bozon v. Bolland, 4 M. & Cr. 354; Hall v. Laver, 1 Hare, 578, cited by Hill on Trustees, 567. These authorities may suffice to show that the agent has no equity against the estate, but must go against his employer. But we are told that the case of Coopwood et al. v. Wallace, 12 Ala. 790, is opposed to this view. We have examined that case with much care, and a majority of the court, although very reluctant to depart from decisions which may be supposed to have influenced the institution of subsequent suits analogous to it in their facts, are nevertheless constrained from their views of the law, and the evil consequences to which the doctrine asserted in the second head note of that case would lead, distinctly to declare their disapprobation of it. To hold that persons employed by an administrator or trustee, may, if such trustee is insolvent, proceed at once in equity to recover their fees out of the trust fund or estate, although such fees may not have been allowed the trustee in the settlement, would be most mischievous in its tendency, as involving estates in much embarrassment and cost, requiring as many accountings between the estate and the trustee as there are demands created by him for the supposed benefit of the estate, and which he fails to pay. We say nothing of the right of the party, after he has exhausted his legal remedy against the trustee, to proceed in equity to subject an equitable demand which the trustee may have against the estate. Neither the case of Coopwood v. Wallace, nor the case at bar requires us to express an opinion on this point. All we now decide is, that those employed by the trustee must look to the trustee, and cannot proceed at once against the trust fund for payment. Such expenses must be settled between the estate and the trustee, which settlement, if it must be made in equity, can be effected by *one* suit, whereas the contrary doctrine would exhaust many estates in cost and expenses, in litigating demands asserted against them which require in each case an accounting between the estate and the trustee, so as to eviscerate a fund for their satisfaction.

Jones v. Dawson et als.

There are numerous cases of our own court holding that where an administrator makes a contract as administrator, he binds himself and not the estate, when the contract is attempted to be enforced at law, and the judgment, upon a declaration averring that the defendant made the contract *as administrator*, is that the same be levied *de bonis propriis*. How then can the plaintiff proceed in equity upon such judgment against the esate, unless upon the idea of subjecting an equitable demand after exhausting his legal remedy?

2. But if we were mistaken, either in the principle above stated, or in its application to the case made by the record, there is another ground upon which relief must be denied.

The fund, or property against which the bill is aimed, is distinctly asserted to be the *corpus* of the trust. Mr. and Mrs. Dawson had a joint estate for life, his interest, however, to cease when his creditors should attempt to subject his property for his debts. The expense here sought to be charged upon the fund was incurred in the management and employment of the property pending the life estate, and evidently for the benefit of the *cestuis que trust* for life, who reaped the profits which accrued from it. It is well settled in such cases, that the *cestuis que trust* for life, who are in possession of the trust estate, are liable for all current expenses attending the enjoyment of the property, and that such expenses constitute no charge upon the general fund, or *corpus* of the trust.—Hill on Trustees, 571, and cases cited in note L.

Were the law otherwise, the estate in remainder would be utterly destroyed in many cases, for the benefit and protection of those entitled for life. So that conceding this bill to have been properly filed, and that the interest of Mrs. Dawson might have been subjected, yet she having departed this life, as is conceded by the counsel in this court, her interest ceased, and consequently no decree affecting the property can be made. The record does not show that there are any issues or profits due her, and none are sought to be subjected.

It results that the decree of the chancellor was correct, and it is therefore affirmed.

DARGAN, C. J.—I cannot join in overruling the case of Coopwood v. Wallace, (12 Ala. 790.) In that case the admin-

·istrators who employed the attorney had resigned, after having come to a final settlement with the Orphans' Court. They were not indebted to the estate, nor had they charged the estate with the fees due the attorney. Under these circumstances, I think it must be admitted, that the estate was ultimately bound for the attorney's fees, and the administrators being insolvent, and without the right then to charge the estate, unless it could be done by bill, I can see no reason why we should not, in that case, let the attorney go directly against the estate. The debt due him the estate owed, not indeed directly to the attorney, but to the administrators who owed the same debt to the attorney. In such a case, when the administrator is removed, and a suit in equity is indispensable to the settlement of the debt, no good reason in my judgment can be given, why we should drive the attorney to a fruitless suit at law, before he can go directly against the estate in the hands of the administrator *de bonis non.*