# KIRKMAN, ABERNATHY & HANNA vs. BENHAM.

[BILL IN EQUITY TO ENFORCE CONSTRUCTIVE TRUST.]

1. *Bill of exchange drawn by executor no claim against estate.*—A bill of exchange drawn by G. S., with the addition of the words "executor of S. S.", is the personal contract of the drawer, and does not bind the estate; and an accommodation acceptor, who pays the bill, has no claim against the estate.
2. *Confusion of debts by executor.*—If an executor, in taking a confession of judgment from a debtor to whom he has loaned the money of the estate, includes a debt due to himself individually, or to another person, this unauthorized blending of the debts creates no right against the estate; and if a succeeding representative of the estate collects a portion of the judgment, not exceeding the amount of the debt due to the estate, the other creditor, whose debt was included in the judgment, is not entitled to share in it.
3. *Constructive trust does not arise from unauthorized confusion of debts.*—An executor, while keeping his testator's estate together under the directions of the will, drew his bill of exchange, in favor of one D., which was accepted for accommodation by K. A. & H., and then discounted in bank. The executor applied a small part of the proceeds to the discharge of debts of the estate, and loaned the residue to said D., as money belonging to the estate. D. afterwards confessed judgment, in favor of the executor, for the amount of his indebtedness to the estate, including this sum, and became insolvent. The executor also became insolvent, and removed from the State. A succeeding administrator collected a portion of the judgment, not exceeding the amount of the debt due the estate; and the acceptors, after paying the bill, filed their bill in equity against him, claiming the right to share in the sum collected. *Held*, that the bill contained no equity.

APPEAL from the Chancery Court of Lauderdale.

Heard before the Hon. A. J. WALKER.

This bill was filed by the appellants, late partners, against Vincent M. Benham, as administrator *de bonis non* of Samuel Savage, deceased; and its material allegations were as follows: That on the 29th September, 1841, complainants, who were commission merchants in the city of New Orleans, accepted for one Geo. M. Savage his bill of exchange, of that date, for $2,300, at eight months, in favor of one Hervey Dillahunty, and endorsed by said Dillahunty and one Thomas U. Lassiter; that said bill purported to be drawn by said Geo. M. Savage " as executor of Samuel Savage, deceased, of whose estate he was then, and had been for several years, the executor"; that complainants, when they accepted said bill, had no funds in their hands belonging to said Geo. M. Savage, either individually or as executor of Samuel Savage, nor have they since had any funds applicable to its payment; that said bill was sold by said Geo. M. Savage to the Huntsville Bank, on the 30th September, 1841, for $2,195 35, and was afterwards protested for non-payment; that said Huntsville Bank afterwards brought suit on said bill, against said Geo. M. Savage, Dillahunty and Lassiter, and recovered judgment against the two former, (Lassiter not being served with process,) on the 22d August, 1842, for $2,454 86, besides costs; that execution was issued on this judgment, on the 24th September, 1842, and was duly returned " no property found"; that complainants afterwards paid and satisfied said bill; that Dillahunty and Lassiter, before the payment of said bill by complainants, became, and still are, insolvent.

The bill further alleged, that said Geo. M. Savage was a son of said Samuel Savage, who died, in said county of Lauderdale, of which he was a resident citizen at the time of his death, in 1837; that the will of said Samuel Savage was duly admitted to probate, and letters testamentary granted to said Geo. M., who qualified and gave bond as executor; that said Samuel owned a large plantation, with many negroes, at the time of his death, and by his will directed that his estate should be kept together for several years, and charged with the support, education, &c., of his two youngest sons, Samuel G. and John T.; that said Geo. M. Savage, out of the proceeds of said bill of exchange, applied $20 to the payment of a debt for necessaries created by said Samuel G.,

and $11 99 to the payment of a similar debt for said John T., and loaned $2,000 thereof to said Dillahunty, as so much money belonging to the estate of Samuel Savage; that he had, for several years prior to that time, been lending the money of his father's estate to said Dillahunty, who was his brother-in-law; "that said Dillahunty, on the 25th July, 1842, secured the payment of all that he owed said Geo. M. as executor of his father, which, with interest up to that time, amounted to $7,773 86, by confessing a judgment for that sum in his favor, as such executor"; that the $2,000 realized from the proceeds of said bill, with $129 24 interest thereon, for which said estate never paid any consideration, were included in this judgment; that said Geo. M. Savage, in November, 1842, absconded from the State, being at the time insolvent; that Vincent M. Benham, the defendant, was afterwards appointed administrator *de bonis non* of said Samuel Savage's estate, and in August, 1843, collected on said judgment confessed by Dillahunty the sum of $5,697; and that the balance of said judgment is still uncollected, and said Dillahunty is still insolvent.

The prayer of the bill is, that the defendant, as administrator of said Samuel Savage, may be made to account with complainant, out of the money collected on said judgment, for the proceeds of said bill of exchange, less its proportionate part of the uncollected balance; and the prayer for general relief is added.

The decision of the case here is made to turn on the equity of the bill, and it is therefore unnecessary to notice the other facts of the case disclosed by the answer and evidence.

On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is now assigned as error.

L. P. & R. W. WALKER, for the appellants:

1. Does the defendant occupy the relation of trustee *in invitum* for the complainants? The confessed judgment is indivisible; and if a part of its consideration moved from the complainants, they are, in equity, entitled to participate in its benefits. The judgment was confessed, in part, to secure $2,129 raised upon the complainants' acceptance, which they afterwards paid, and which was loaned by G. M. Savage, as

executor, to Dillahunty. The estate of Savage was not enti-
tled to this $2,129, for it had paid nothing for it. If the
complainants, after the confession of judgment, but before its
payment, had paid their acceptance to the Bank, would not a
court of chancery, on their application, have restrained the
defendant from the collection of so much of the judgment?
Is the case altered, in principle, by an after payment? Is
the money now less theirs, or more the defendant's, than it
would then have been? If it is not the money of complain-
ants, whose is it?

The maxim, *qui prior est in tempore, potior est in jure*, does
not apply. There was no race of diligence. When the judg-
ment was confessed, complainants were not creditors; when
it was paid, they were not creditors. Neither at the time of
confession, nor at the time of payment, were they entitled to
the one or the other. They were not the creditors of Geo.
M. Savage, of the estate of Samuel Savage, or of Dillahunty.
Their rights were *in fieri*, and contingent. But, on the pay-
ment of the bill, the question instantly arises, Who is enti-
tled to the $2,129 ?—the appellants, whose acceptance pro-
cured it, and who have paid for it; or the estate of Samuel
Savage, which received it without consideration, and loaned
it without acknowledgment? Benham's predecessor, in taking
the confession of judgment, assumed to act for whosoever was
entitled to the $2,129, by including it in the judgment; and it
does not now lie in the defendant's mouth to repudiate the
trust, by alleging that there is no community of interest be-
tween the complainants and the defendant in the judgment.
Having received money upon a judgment confessed at his
instance, to a part of which, as between himself and the com-
plainants, he is not entitled, constitutes an equity binding on
his conscience, which this court will constrain.

The fact that the whole judgment was not collected, does
not at all weaken the principle contended for. Whenever
complainants paid their acceptance of the bill of exchange,
they became entitled, as against the estate of Savage, to all
the benefits resulting from the confessed judgment, in which
was included the $2,129. No part of this sum belonged to
the estate of Savage—it was all complainants'; and the ques-
tion now is, whether any part of that sum was received by

the defendant. The judgment was a unit, and embraced as fully this sum as the balance of $5,050. If the defendant received any portion of that sum, did he not necessarily receive it as well for complainants as for the estate? Can there be a superior equity in an indivisible title, having a common source and a contemporaneous origin? Benham could not collect for himself, without collecting for the complainants. The trust which we seek to enforce, had its origin when the judgment was confessed; and whenever any portion of that judgment was collected, the trust was in part performed. By accepting the confession of judgment, the defendant is estopped from seeking to distinguish between the constituents of the judgment. He cannot now be heard to say, ' What I have collected is my part of the judgment, and what remains uncollected is yours.' Dillahunty himself, in the confession of judgment, had refused to discriminate in favor of either claim, but placed them all on precisely the same footing. The right of all persons to discriminate ceased with the confession of judgment; and whatever was accomplished under the judgment, and in execution thereof, was a common benefit to all those who had rights under it.

2. When complainants paid the bill, they were entitled to be subrogated to all the rights of Geo. M. Savage in the judgment. Concede that the $2,129 was due to him individually, and not as executor; still he had the right, when any portion of it was collected, to make a *pro rata* application of the sum received to his individual claim; and to this right complainants were substituted, whenever, by discharging their acceptance, they became his creditors. His removal from the administration, and Benham's appointment, do not alter the case. If he had paid the bill, he could have compelled Benham to account; and this right, upon his failure and complainants' performance, enures to their benefit by subrogation.

JOHN A. NOOE, *contra:* The only question in the case is, whether the defendant, as administrator of Samuel Savage, has any money in his hands, collected on the confessed judgment, to which the complainants have a better right in equity than the estate of said Savage has. The judgment was con-

fessed in favor of Savage's estate. Dillahunty certainly owed the estate as much money as was collected on the judgment, while he did not owe the complainants anything. George M. Savage was their debtor; and they had no claim, at law or in equity, upon Dillahunty, and no rights accrued to them in the confessed judgment.

STONE, J.—The bill of exchange mentioned in the pleadings, although signed as drawer by George M. Savage, styling himself " *executor of Samuel Savage*," is the personal contract of Geo. M. Savage, and does not bind the estate he represented. Kirkman, Abernathy & Hanna were accommodation acceptors, and, as such, have a right to be reimbursed by Geo. M. Savage, the drawer. This, however, gives them no claim against the estate of Samuel Savage.—Johnson v. Gaines, 8 Ala. 791; Willis v. Willis, 9 Ala. 330; Jones v. Dawson, 19 Ala. 672.

The money raised on this bill of exchange was used by Dillahunty, with the consent of Geo. M. Savage; and both Dillahunty and Geo. M. Savage are insolvent. The gravamen of the bill, as we understand it, is, that Geo. M. Savage, after he had, without authority, lent to Dillahunty moneys of the estate of Samuel Savage, took from the said Dillahunty his confession of judgment for said moneys, and also embraced in the judgment the moneys raised on said bill of exchange. This confession of judgment was to " Geo. M. Savage, executor of Samuel Savage, deceased." Benham, the administrator *de bonis non*, has collected a part of said confessed judgment, but there still remains an unpaid balance, greater in amount than the claim of complainants. The bill prays a *pro rata* division of the fund collected. The unauthorized blending, by the executor in chief, of a debt due to himself or to complainants, with a debt to the estate of his testator, can not confer a right on complainants to go against the estate of Savage. If Benham had collected of Dillahunty more than was due to testator's estate, that balance would, *ex æquo et bono*, belong to complainants, or to George M. Savage. Whether such balance could be recovered by suit in chancery at the instance of complainants, we are not called upon to

decide, as the bill contains no averments to raise this question.

Another view is fatal to this bill. There is no averment, denying that Geo. M: Savage obtained credit in his administration for the moneys lent to Dillahunty, and those paid to Patton.—See Jones v. Dawson, *supra*.

There is no equity in the bill, and the decree of the chancellor is affirmed.