POLLARD ET AL. *vs.* CLEAVELAND, ET AL.

[BILL BY CREDITORS TO SUBJECT SEPARATE ESTATE OF MARRIED WOMEN TO PAYMENT OF DEBT DUE THEM.]

1. *Trustee of married woman's separate estate; persons who have traded with and given credit to, what cannot do, in first instance, to collect their debt.*—Persons who have traded with, and given credit to, the trustee of a married woman's separate estate, cannot, in the first instance, go into chancery to have their debts paid out of the trust estate.

2. *Same; where trustee, as member of a company, is seller, and as trustee, becomes buyer for trust estate.*—A trustee, who is a member of a company, and as such member, becomes the seller, and as trustee, the buyer, for and on account of the trust estate, makes no exception to, but rather a reason for, the necessity and propriety of the general rule.

APPEAL from the Chancery Court of Russell.
Heard before the Hon. N. W. COOKE.

THE original bill in this cause was filed 18th March, 1858, by Charles T. Pollard, Samuel G. Jones, and Wm. C. Yonge, partners and joint owners of the "Chewacla Lime Works," against Mrs. E. E. Cleaveland, C. T. Cleaveland, her husband, and W. C. Yonge, her trustee, and sought to subject Mrs. Cleaveland's separate estate, held under the will of her deceased father, to the payment of a debt contracted by her, with complainants. The bill alleges, that "Yonge, the trustee, at the special request and instance of Mrs. Cleaveland, purchased for her separate use, a village lot of four acres, near Yonge's station, and an eighty acre tract of land adjoining; and that complainants jointly furnished lime, lumber, laths, service, and other material towards the construction of a comfortable residence thereon, for said Mrs. Cleaveland; all of which was done with the approbation of her said husband, and they established themselves in the use and occupation thereof." That "in the years 1855-6-7, complainants jointly furnished said Mrs. Cleaveland, by her express de-

Pollard et al. v. Cleaveland et al.

sire, with various articles, suitable and proper to her con-
dition in life, and advanced various sums of money to her,
and for her benefit, in the same way." Attached to the
bill, and made an exhibit thereto, is an account of the
articles so furnished, including lime, lumber, bacon, meal,
railroad tickets, moneys paid out for work, groceries, &c.,
amounting, in all, to $1455 30, and "all under the faith
and credit of said separate estate." The bill alleges that the
purchase was a reasonable and prudent one, and suitable to
the condition in life of Mrs. Cleaveland, and safe; that
although Mrs. Cleaveland and husband still reside on the
premises, although she has been requested to allow some
property to be sold, &c., &c., she refuses to do so." On the
final hearing, the chancellor (Hon. J. B. Clarke) decreed
that complainants were entitled to the relief prayed for,
and ordered the sale of a part of Mrs. Cleaveland's sepa-
rate estate, unless complainants' debt was paid by a given
day. From this decree the defendants appealed to this
court, assigning as error—1st. That the bill was not
dismissed for want of equity; 2d. The final decree.

At the June term, 1861, this court reversed the decree
of the chancellor, and remanded the cause; holding that
while "such a transaction as this may be upheld, if there
be no bad faith or oppression on the part of the trustee;
still the *onus* rests on the trustee who seeks to enforce
such a contract, of repelling the imputation of bad faith
and oppression."—See *Cleaveland v. Pollard*, 37 Ala. 560.

On the 19th of May, 1862, complainants filed an
amended bill; amendment as follows: "That it is not
only true that your orators furnished lime, lumber and
service, and other materials towards the construction of
her comfortable residence, as set out in original bill, but
they expressly aver that every charge and item of said
bill is fairly charged, and never at an unreasonable price,
and when any article was purchased for her, it was never
charged at any enhanced price, but always at cost; that
when cash advances are charged to her, or for her use, it
means that *exactly so much cash was charged* as was *paid*,
and no more than cash actually expended. The amend-
ment alleges that complainants were compelled by their

business to employ a large number of mechanics, black-smiths, millers, wheelwrights, &c., and "if they had declined to allow these to help Mrs. Cleaveland, it would have put her to great inconvenience, by causing her to send several miles for such work and assistance, &c., and a refusal to allow them to aid her, would have seemed unkind and ungenerous, and that for this reason, although inconvenienced thereby," and sometimes having to hire mechanics to fill the places of those aiding Mrs. Cleave-land, they allowed the work to be done for Mrs. Cleave-land, and that "neither for this, or any other aid, advance, or material, did they ever charge more than actual cost."

Mrs. Cleaveland answered the amended bill, denying that she contracted with complainants, but admitting that she did agree that Yonge, her trustee, should sell her the four acre lot and the eighty acre tract, which she thought was trustee's own property, and did not know otherwise until the deed to the land was made ; denies that lot and land were purchased at her request ; avers that she only consented to buy on the solicitation of her trustee, who insisted that she would thereby better her condition ; admits agreeing that the trust funds of her estate, *in the hands of said Yonge*, should be chargeable with said pur-chase ; denied that the charge for building materials was fair ; avers that it was exhorbitant ; admits the correctness of the other items, with the exception of about $40 ; and charges that the lumber and building was done *on the credit of her husband*, who has, since the filing of the origi-nal bill, deserted her ; charges that Yonge has still $963 65 of trust funds in his hands, and that the charge for build-ing was not a charge against her, but against her husband ; admits that house built for her husband is suitable to her condition in life ; admits that she once commenced a set-tlement with said Yonge, agreed to pay whatever was right in the matter, doing this as a matter of peace, but afterwards declined to proceed with the settlement ; still believes that her trustee is indebted to her. The defend-ant, Mrs. E. E. Cleaveland, then demurred to the bill for want of equity ; the chancellor sustained the demurrer and dismissed the bill, citing *Jones v. Dawson*, 19 Ala. 672.

The complainants appeal to this court, and now assign the decree of chancellor as error.

GOLDTHWATE, RICE & SEMPLE, for appellants.—1. The sole question is, whether there is any equity in the bill. The chancellor thought there was none. But his opinion is based upon at least two palpably erroneous assumptions, to-wit: 1. That *Jones v. Dawson*, 19 Ala. 672, is good law. 2. That the case made by the present bill is similar to that made by the bill in *Jones v. Dawson*.

*Jones v. Dawson*, so far as it overrules or conflicts with *Coopwood v. Wallace*, 12 Ala. 790, is virtually overruled by *Mulhall v. Williams*, 32 Ala. 489, to which the careful attention of the court is here invited.

But even if *Jones v. Dawson* was not thus destroyed as authority, and was conceded to be good law, it could neither apply to nor govern the present case. In *Jones v. Dawson*, the trustee acted alone on his own judgment and inclination, *without any request or direction* of the married woman who owned the separate or trust estate. But here, the case is totally different; the woman owning the separate estate *makes the request, and at her own request and desire* procures what are comprehended under the term *necessaries*—a residence, a lot, the construction of a comfortable dwelling thereon, and various other equally needful things, upon the faith of her request and separate estate, and upon undoubted good terms in every instance; and after procuring all these from the complainants, who acted with the utmost good faith and fairness, she refuses to pay any thing, and asks the court of equity to indorse or approve her conduct. Her estate is not a statute separate estate, but a separate estate created by will and vested in a third person as trustee for her; it is a separate estate by common law, independent of any statute; and *she* may charge it, either by express or *implied* contract; and such charge will be enforced in a court of equity.— *Walker v. Smith*, 28 Ala. 569, and other authorities there cited.

In *Jones v. Dawson* and other cases, the effort was to

support the proposition that . *the trustee,* on *his own mere inclination,* could charge the trust estate.

The proposition embodied in the present bill, is, that *the married woman herself* may charge her separate estate. Surely, that proposition is correct, and the decree of the chancellor wrong.

The amendment of the bill, made and filed after this case was formerly reversed and remanded by this court, clearly entitles the complainants to relief upon the allegations contained in the bill *as amended. It was in view of the opinion delivered by this court in this very case, that the amendment was made;* and in that amendment there is equity, as is clearly shown by the former opinion of this court in this case.—See *Cleaveland v. Pollard,* 37 Ala. 556.

On an appeal from a decree dismissing a bill for want of equity, every allegation of the original and amended bill must be taken as true by the supreme court. In this view, it seems clear the chancellor, in dismissing the bill for want of equity, denied all force to the opinion of the supreme court, as reported in 37 Ala. 556.

Besides all this, the equity and fairness of complainants' claim, is admitted in the answer of the married woman, on page 22 of the transcript.

CHILTON & CHILTON, for appellee.—The theory upon which this bill is framed is false, and if affirmed by this court, would work incalculable injury to trust estates.

The theory is this: That a trustee who has been appointed to husband an estate—appointed, as in this case, by the court of chancery, to take charge and manage the title patrimony which accrues to a married woman— may, without even the order of the court which appoints, or of any other court, invest the funds of his *cestuis que trust,* in an unimproved tract of land, and then turn out and contract debts for the improvement of the land, giving to the creditor a right to come into equity to sell the land thus improved, to pay for the expense of improving it. Or, to state the proposition less involved; that a trustee may contract debts on account of the trust, and that the

creditor can come into equity in the first instance, the trustee being solvent and residing in the State, to enforce the collection of their demands out of the trust property.

This court has fully examined this question in all its length and breadth, and after a careful review of the authorities, have held that the creditor must look to the trustee, and cannot, in such case, go directly upon the trust estate.—See *Jones v. Dawson et al.*, 19 Ala. 672.

If the trustee had made fifty contracts with different persons, can it be possible that the trust estate, for the protection of which he intervenes, is liable to fifty suits and fifty different accountings at the suit of the parties? We think the evils of such a doctrine would prove most ruinous to estates represented by trustees, administrators and executors.

In this case, let Mr. Yonge pay the demand to his company, and then let him file his bill, and if his expenditure is such as the court of chancery would have ordered him to make, it will be refunded.—Lewin on Trustees, p. 455; Hill on Trusts and Trustees, p. 567, fully sustain my views, and the decision of this court in *Jones v. Dawson et al.*, *supra*.

The decision in the case of *Coopwood & Driver v. Wallace*, 12 Ala. 790, so far as it holds a different doctrine, is, after careful consideration, overruled by the case of *Jones v. Dawson.*

PECK, C. J.—The real question, in this case, is, whether parties who have traded with and given credit to the trustee of a married woman's separate estate, for and on account of said estate, can, in the first instance, go into chancery to have their debts paid out of the estate of the *cestius que trust*, in the hands either of the trustee or *cestius que trust.*

This question is substantially answered in the negative, in the case of *Jones v. Dawson et al.*, 19 Ala. 672. The principles and rule established in that case, we think, reasonable and necessary for the safety and protection of trust estates. That case is well sustained by the authorities cited by the learned judge, in the opinion of the court

delivered by him. Among other reasons there given for that decision, is the one, that to permit the creditors to institute such a proceeding, would be to subject the trust estate to the costs and expenses of as many suits and accountings as there might be creditors, to the great injury, and perhaps ruin of the estate; that the true rule is, to require the several creditors to seek the payment of their debts against the trustee, in the first instance, on his personal liability to them, and when he has paid the debts, then his remedy for the debts so paid, would be against the trust estate, which would require but one suit and one accounting. We do not deny that there may be exceptional cases that will permit the creditors to proceed at once against the trust estate; the insolvency of the trustee, with other circumstances, might perhaps form such a case. Each case, however, must depend upon its own circumstances; no fixed, certain rule can be laid down that will be applicable to all such cases.

We discover nothing in this case that should make it an exception to the general rule. There is a peculiarity in this case; it may be called an anomaly in cases of this sort, or any other. It is this: The appellants, complainants below, are a company, consisting of several members, the trustee of the appellee's separate estate, being one of said company, and is, for that reason, made both a complainant and a defendant; a complainant, in his character as creditor, and defendant, in his character as trustee. His interest as creditor is in direct antagonism to his interest and duties as trustee. In one character he is interested in prosecuting a claim by suit, either just or unjust, against the estate; in his character as trustee, his interest, or, at least, his duty is to defend the trust estate, and see that it receives no injury or detriment. This is a circumstance that strongly commends the justice and propriety of said rule, and a good reason why this case ought not to be considered or held to be an exception to the general rule.

We have carefully examined the cases referred to on this question by the counsel of the appellants, and do not think any of them, properly understood, either shake or weaken

the authority of the case of *Jones v. Dawson et al., supra.*

The chancellor, holding to the principles settled in that case, sustained a demurrer to the appellants' bill of complaint, and dismissed the same.

We approve of the decision of the chancellor, and affirm his decree.

Let the decree of the court below be affirmed, at the costs of the appellants.

NOTE BY REPORTER.—At a subsequent day of the term, the following response was made to appellants' petition for a re-hearing.

PECK, C. J.—I have carefully examined the petition for a rehearing, and the authorities referred to, but they fail to satisfy me that the opinion is wrong. I am fully persuaded it is right. The application for a rehearing is denied.