## MAYOR, ALDERMEN, &c., OF MOBILE vs. DARGAN, Ex'r.

[BILL IN EQUITY TO ENJOIN CITY AUTHORITIES OF MOBILE FROM COLLECTING ASSESSMENT AGAINST REAL ESTATE, TO DEFRAY EXPENSES OF PAVING, &c., UNDER SECTION 58 OF CHARTER OF 1866.]

1. *Mobile; charter of, how repealed; what part of void.*—The charter incorporating the city of Mobile creates a public municipal corporation, which may be altered and controlled by the legislative department and by the constitution of the State. Any of its provisions in conflict with the constitution of the State, which went into force after the passage of the charter, are void, and cannot be enforced.

2. *Same; charter of 1866, section 58 of, is void.*—Section 58 of the charter of Mobile, (Acts 1866,) which seeks to give authority to the city government to improve its streets in the manner therein indicated, is in conflict with the present constitution, and is, therefore, void.

1. *Same; who not proper party to make application, &c.*—An administrator is not such an owner of the lands of the deceased whom he represents, as can make the application provided for in said section. The owner mentioned in said section is the heir or devisee. The application must be made by the owners of one-third of the property on each side of the street, taken separately, and not by the owners on both sides of the street sought to be improved, taken jointly, to bring the application within the sanction of the act.

4. *Taxation; rate of; extent of, by municipal corporation.*—Taxes on the same species of property should be equal, and assessed according to the value of the property taxed, and not according to the extent of such property adjacent to the street, &c. When a tax is levied by a municipal corporation, it can not exceed a rate of two and one-half per centum on the assessed value of the property taxed; and the tax must be levied on

all the taxable property within its limits, according to its value; and not upon the property of a few only.

APPEAL from Chancery Court of Mobile.
Tried before Hon. ADAM C. FELDER.

The city authorities of Mobile, under section 58 of the charter, (Acts 1865–66, p. 223,) paved Royal street from St. Michael to St. Francis street, with Nicholson pavement. The estate of Hearne owned two lots, fronting together sixty-four feet on Royal street, (the total front of all property on each side of the street being one hundred and seventy-two feet,) which bounded the lots on the east; and there was assessed against these two lots, as their *pro rata* share of the expense of the paving, according to the number of feet front on Royal street, the sum of $426; and a warrant was placed in the hands of the city tax collector to enforce the payment of the same.

This section of the charter provides that the city may do the paving at its own expense, or on "the written application of the owners of at least one-third in quantity of the estate located on each side of the street," may cause the work to be done at the expense of the real estate owners; and that the property on each side of the street improved, shall pay of the expense, &c., "a fractional share thereof equal to its front" on such street.

Dargan, executor of Hearne, filed his bill against the city authorities, to restrain the collection of this tax, and alleges therein that neither himself nor the heirs or devisees of Hearne ever made any application, in writing or otherwise, to have said street paved ; that the paving was not necessary, but was put down as an experiment, in order to see whether to use the pavement generally ; that no one who had any authority legally to bind Slatter's estate, which owned real estate fronting on Royal street, ever applied or petitioned, &c., to have said improvement made; that, Slatter's estate not being bound, less than one-third of the owners of real estate of the west side of Royal street made such application; that the city authorities have no constitutional right to make the owner of a lot, who has

not made application for such improvement, pay mor$^e$ toward such improvement than any other owner of land in the city. Upon complainant giving requisite bond, a temporary injunction was granted, according to the prayer of the bill.

The cause was submitted for decree on bill, answer, evidence, and admission of counsel. It was proved that the application made in behalf of H. A. Slatter's estate, was made by his administrator, and that at the time of his signing the same there were living three heirs,—H. H. Slatter, the administrator, and his brother and sister, who were the heirs of said Slatter, deceased.

The contract was made for the paving August 18, 1868, and the paving was finished September 18, of the same year.

The chancellor, on final hearing, made the injunction perpetual, and taxed the defendants with costs, and hence this appeal.

The decree is now assigned as error.

P. HAMILTON, for appellant.—It appears that all on the east side petitioned for the improvement ; but it is charged that one-third on the west side did not petition. Mrs. Roper petitioned ; the estate of Slatter did by its administrator ; the estate of Hearne did not petition. The whole front is one hundred and seventy-eight feet ; it thus appears that one hundred and fourteen feet did so petition, which is more than one-third of the west side, while the whole did on the east side. Complainant objects, however, that the estate of Slatter only acted by its administrator, and that consequently the requisite one-third did not apply. Several answers are made :

1. The whole of the east side applied, and that is more than one-third in quantity of the total on each side of the street,—which was all that is required by the charter.

2. That the estate of Slatter did petition, by its authorized agent, the administrator. He, by the law of the State, was the legal agent ; he is entitled to the possession. He gives bond for the real, as well as the personal estate ; he is authorized to rent the real estate. He is the proper person to bring ejectment, and assert the title to the real

estate. He is its proper representative, and with whom the public deals.—Revised Code, §§ 2003, 2073, 2076, 2079 to 2096, 2118, 2123, 2130–3. If this be not so, *by what right does this executor attempt to represent the real estate of his testator, in this court, in this case?*

3. The administrator of Slatter's estate is one of the three heirs; he was personally entitled to one-third of this lot, that is, to twenty-five feet. Twenty-five feet added to thirty-nine feet, the Roper lot, makes sixty-four feet; and that is more than one-third of the western front of this square. So that in every aspect of the case, more than the requisite proportion of the property fronting on the improvement, petitioned for it.

But this complainant, the executor of one estate, has no right to speak for this estate. If the latter do not approve it should speak for itself. Their silence is an approval. The proceeding is within the scope of the ordinary powers of a municipal corporation, viz: the improvement of its street.—36 Ala. 437, *et seq.;* and is within the specific powers named in section 58 of the city charter.

5. The case is also within the provisions of section 94 of the same charter.—See Acts of 1866, p. 233, which declares that if such improvement be made at the request of one-fourth of the owners, and under ordinance of the city, without more, the parties benefitted shall contribute to the expense. These considerations make a perfect defense to the bill; and the court erred in rendering its decree for complainant.

6. No question of constitutional power is raised by the bill; and that objection was made in the argument. No such objection, however, exists. In the first place, there is no such provision as that taxes must be uniform; they must be levied according to value. But according to all the authorities, *this power of assessment for local improvement of a city* does not fall within such provision. It falls within the general power of the State to grant such authority to a municipal corporation, and is *entirely within the discretion of the general assembly.*—4 Comst. R. 419; 17 Wis. 284; 8 Ohio St. 338; 36 Barbour, 177; 42 Barbour, 288; 19 N. Y. 116; 2 Kans. 186; 2 Kans. 454.

E. S. DARGAN, *contra*.—The first question is, that the tax is illegal accor'ding to the construction of that act. For one-third of the owners of the land in quantity front should sign a written application for the improvement.

It is true, the administrator of Hope Slatter joined in the petition; but he joined as administrator. This could not *bind the* estate of Hope Slatter, nor create a charge on the land; for an administrator *can create* no lien on the lands of his intestate, nor make any new contract that will bind the estate.

2. But it is said that the owners of one side of the street making the application, being more than one-third, may make the improvement, and bind both sides. This is in direct conflict with the language of the act itself, for the owners of at least one-third in quantity, *on each side* of the street, must *unite* in the *petition*, according to the language of the act; and to say that the owners on one *side*, because they own half, may do the work or cause it to be done, is to *disregard* the plain words of the act itself. The application of Slatter's administrator being void in law, only Roper's land was bound, on the west side, which is less even than one-fourth on the west side of Royal street. Hence, one-third of the owners in quantity on each side did not sign the written application.

3. But the tax is in direct conflict with section 1, article 19, of the constitution, which is in the following language: " All taxes levied on property in this State shall be assessed in exact proportion to the value of such property." Now, to assess a tax by the length of a front or lateral line, without regard to value, or even actual *quantity*, of the land, is so clearly repugnant to the constitution that argument is unnecessary to prove it. The answer shows that the contract for paving was entered into after the new, or last, constitution went into operation; and to hold that this clause of the constitution applies only to general taxes, and not to local taxes, is to disregard the plain language of the constitution. " *All taxes levied on property in this State,*" &c., does *ex vi termini*, include *all*, whether they be assessed for a local or for general purposes; and we would have as much right to say that "all taxes," &c., does not include

a general tax, as to say it does not embrace a local tax.

That the right sought by the city to be enforced is a local tax, within the true meaning of the constitution, see *Hamett v. The City of Philadelphia*, 8 Amer. Law Reg. 44, and the cases referred to in that opinion.

Argument is not necessary to prove that the amount claimed is a *local tax ;* it can be called by no other appropriate name. To say it is an assessment of property for public use, is absurd. For if it be true that adjoining property may be charged with improvements according to the benefits conferred by such improvements, still a jury must be impanneled under the law to ascertain the benefits. But in this case, the tax is levied without regard to the benefit, and without regard to the value, only regarding the front line. Now, suppose the depth of the lot only ten feet, and its value not more than equal to the tax ; the owner would lose his property, under the idea that it was not a tax but something else,—an assessment, say—which can lawfully be made, although there be no benefit, and though it *confiscates* the whole property of the owner without compensation.

It is better that we adhere to the plain language of the constitution, and protect the rights of all, than by nice philological distinctions which ingenuity may suggest, break down the constitutional protection to property, and introduce a rule by which *private* property may be seized and *confiscated* for public use, without compensation.

PETERS, J.—The main allegations of the bill in this case are not denied, so far as the facts alleged therein are concerned. This leaves but a single question to be determined in order to settle the equities of this case. That question is this : was the *fifty-eighth* section of the act to incorporate the city of Mobile in conformity to the constitution of this State, at this date, or not? This law is entitled "an act to incorporate the city of Mobile," and was approved February 2, 1866. The section referred to is in these words : Sec. 58. Be it further enacted, That it shall be lawful for the mayor, aldermen and common council of the city of Mobile to pave, shell or plank, any street or

streets, part or parts of a street, within the limits of said city, whenever they deem it expedient, at its own expense; or it may be done upon the written application of the owners of at least one-third in quantity of the real estate located on each side of the street or streets, part or parts of a street which it may be proposed to have thus improved; which said paving, shelling, or planking, shall be at the expense of the owners of the property located upon any street or part of a street so improved, in such proportion as that each piece of said property shall pay of the expense of any such improvement a fractional share thereof equal to its front on any such street or parts of a street so improved; and after such improvement is complete, for the purpose of ascertaining the portion of said expenses to be paid by the owners of such property, it is hereby made the duty of the city surveyor and the mayor of said city to certify in writing the proper amount due from each owner, or piece of property whose owner is unknown, to the tax collector of said city; which amounts, so certified, shall respectively be levied on each piece of said property, and shall be collected by said corporation in like manner as taxes on real estate are authorized to be collected under the provisions of this charter, and when so collected the tax collector shall pay the same to the city treasurer." Pamph. Acts 1865–66, pp. 223, 202. The charter provides that the assessment roll of taxes made in said city shall have the force and effect of a judgment at law against the individual assessed with such taxes; and the real and personal property of the person so assessed may be sold by the tax collector to satisfy the same, in the event that such taxes are not paid as required by said charter.—Pamphlet Acts 1865–66, p. 217, §§ 38, 39. These are the chief provisions of the charter of the city of Mobile necessary to be noticed in this opinion. It is contended by the eminent counsel for the appellee, that this section of the act above quoted, so far as the powers attempted to be executed under it to enforce the collection of the sum of money assessed against the estate which he represents, is unconstitutional and void.

There must be some power lodged somewhere, compe-

tent to make all laws necessary for the good government of the people of the State; that is, a power to legislate wherever legislation may be needed. The exercise of such a power is necessarily incident to all governments.—*Pickett, ex parte,* 24 Ala. 91, 96. In this State, this power to make laws is specially granted by the people to the general assembly.—*Pickett, ex parte,* 24 Ala. 91, 96. It is an affirmative grant of the whole law-making power to a special body; and such a grant confines the authority thus given solely to this body. The people, in whom the supreme and ultimate authority is vested, never pretend to make laws in a body, *sui generis.* They never assume to legislate, except through the instrumentalities of a government. Then, the general assembly, within the limit of its powers, is the only legislative body of the State, after the government is once ordained and established under a State constitution; except, perhaps, when the people choose to exercise their sovereign power by a convention.—Const. Ala. 1819, art. 2, § 1; art. 3, § 1; Const. Ala. 1868, art. 3, § 1; art. 4, § 1; *Cohens v. Virginia,* 6 Wheat. 264, 394, 395; *Penhallen v. Doane's Adm'r,* 3 Dal. 93; *Livingston v. Moore,* 7 Pet. 546; Jameson's Const. Conv. p. 17, § 18, *et seq.* All the branches of the government are created by the people, and the officers who are to discharge the duties thus imposed are of their selection. All act under the same oath of fealty to the Constitution. They are co-ordinate and independent in their several departments. It is not to be presumed that the people are not competent to make selection of proper agents to fill their offices, or that the persons so selected are incompetent or unfaithful. All indeed may err, for error is human; and error may be and should be corrected. To do this is one of the chief duties of this tribunal. This is emphatically a court for the investigation of errors, and for their correction. This power necessarily reaches not only a violation of the laws, but also a violation of the constitution, which is the law of laws. And although the duty to set aside a legislative enactment as void for want of conformity to the State constitution is one of very great delicacy, and almost always is attended with very great difficulties; nevertheless it is a duty this court

cannot shun. Chief Justice Marshall, whose mind often ascended to heights of little less than prophetic grandeur, in discussing the great questions necessary to settle and harmonize our complicated system of government, has left us a maxim on this subject full of his profound judicial wisdom. He says: "It is most true that this court will not take jurisdiction if it should not; but it is equally true, that it must take jurisdiction if it should. The judiciary cannot, as the legislative may, avoid a measure because it approaches the confines of the constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties a case may be attended, we must decide it if it is brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Questions may occur which we would gladly avoid, but we cannot avoid them. All we can do is, to exercise our best judgment and conscientiously perform our duty."—*Cohens v. Virginia*, 6 Wheat. 264, 404. At the same time, this high power is to be exercised with the greatest caution. The unconstitutionality of a legislative enactment must be clear and palpable, before it can be so declared. Therefore, no enactment of the general assembly of the State will be assailed for want of conformity to the constitution, unless it clearly invades some provision of that instrument. *Fletcher v. Peck*, 6 Cr. 87, 127. The city of Mobile, in its corporate capacity, is a public municipal corporation, and as such it is subject to the control of the government of the State and the laws and constitution of the State. Ang. & Ames' Corp. p. 27, §§ 30, 31, *et seq.; Trustees Univ. Ala. v. Winston*, 5 S. & P. 17; 3 S. Cond. Rep. 280. It is therefore subject to be limited in its powers by the constitution of this State of 1868, as a law of the State.

It is insisted by the eminent counsel for the appellee, that the *fifty-eighth* section of the act above quoted is repugnant to section *twenty-five* of Article I, and section *one* of Article IX, of said constitution; and for this reason it is void. Said section one, of Article IX, is in these words: "All taxes levied on property in this State, shall be

assessed in exact proportion to the value of such property; *Provided, however*, That the general assembly may levy a poll tax, not to exceed one dollar and fifty cents on each poll, which shall be applied exclusively in aid of the public school fund." The assessment complained of in this instance is obviously not such a tax as is here spoken of. The word tax, like every other word, limits its own meaning. Here taxes are divided into two classes : such as are levied on the property, and such as are levied on the person. By the act above quoted, the tax is not assessed according to the value of the property attingent to the improvement, but "according to its front on any such street or parts of a street so improved."—§ 58, *supra*. This is not now a legitimate mode of levying a tax in this State. It evidently violates the constitutional rule above laid down. So far, then, as this portion of said charter is involved, the present constitution of the State operates as a repeal of it. It is not continued in force, because it conflicts with this constitution.—Pamph. Acts 186-, p. 7 ; Act 29th July, 1868. The rule of assessment laid down in the constitution is a simple and a plain one, and it is the only rule prescribed. It would, then, be unwise to permit it to be displaced by a substitute, though the latter might effect the same end. The safer doctrine is, that the rule prescribed is the only rule. *Expressum facet cesssare tacitum*.—Broom's Max. 278, 279, marg.

The other portion of the constitution invoked by the appellee is in the following words : " That private property shall not be taken or applied for public use, unless just compensation be made therefor ; nor shall private property be taken for private use, or for the use of corporations, other than municipal, without the consent of the owner ; *Provided, however*, That laws may be made securing to persons or corporations the right of way over the lands of either persons or corporations, and for works of internal improvement, the right to establish depots, stations, and turnouts ; but just compensation shall, in all cases, be first made to the owner."—Const. Ala. 1868, Art. I, § 25. A tax is an orderly rate levied on the property of the citizen according to its value, or a fixed sum levied on

his person, for the public use. And as it is for the use of all, it ought, in strict justice, to be levied on the property of all. Here the levy is not upon the property of all the citizens for a public purpose, but it is on the property of a few, for the public use—for the improvement of a public street. Most clearly, all taxes are intended to be as nearly equal as possible. If they are local, and for community or local purposes, the whole community is presumed to be interested in their appropriation; and for this reason all are required to contribute to supply them. A tax levied for national purposes, is levied upon the whole people of the nation; a tax levied for a State, falls on all its people; and in like manner, a tax levied for a county is paid by the whole people of the county. So must it be with a tax levied on the people of a city or town, in order to make it just and equal. Such levies may include every thing that may be called property—every thing that can be owned. Such taxes, to make them just, must be in proportion to the value of the property upon which the burden is imposed, and they must be levied upon all, and not upon a few only. This is said to be an inherent principle of all taxation. It is the limit that use affixes to the word. *Weeks v. Milwaukee*, 10 Wis. 258; *Ryerson v. Uttley*, 16 Mich. 269; *Merrick v. Amherst*, 12 Allen, 504; *Wells v. Weston*, 22 Mo. 385; *Covington v. Southgate*, 15 B. Mon. 491; *Morford v. Unger*, 8 Iowa, 82; Const. Ala. 1868, Art. IX, § 1. If this, then, is not a tax in the just and proper sense of that word, it is a seizure of the private property of the citizen for public use, without his consent, and without first making to the owner just compensation for the same. This the constitution of the State forbids. Const. Ala. 1868, Art. IV, § 36.

Besides this, the city charter only authorizes such improvements, as the one here in question, to be done at the expense of the owner, as provided in the 58th section, upon " the written application of the owners of at least one third in quantity of the real estate located on *each* side of the street or streets, or part or parts of a street, which it may be proposed to have thus improved." This very clearly requires the owners of the property on the one

side, as well as on the other, to the extent of one third in quantity of the real estate, to join in the application. If all the owners on one side join, and less than one third in quantity of those on the other, this will not suffice. The bill alleges that this is the case in this instance : " that less than one third in quantity of the owners of the west side of Royal street made such application, (if any did)." It is also charged in the bill, that the application on the part of Slatter's estate was made 'by the administrator of that estate, and not by the heirs of Slatter. Such an application is not within the meaning of the word owner, as used in the statute. The administrator is not the owner of the real estate of the deceased, as administrator. He can not charge the land with the payment of a debt, nor has he possession of the land, except for the purpose of the trusts dependent on his office as administrator. The owner is the heir, where there is no will, and the devisee, where there is. The administrator can neither pledge the lands of the deceased, nor charge them with the payment of debts, except for the purpose of his trust. He is not authorized to improve nor to pay for improvements, except for the purpose of keeping the property in repair.—*Patton v. Crow*, 26 Ala. 426, 432 ; *Pettit's Adm'r v. Pettit's Heirs*, 32 Ala. 288, 311 ; *Avary, Adm'x, v. Avary et al.*, Jan. T. 1871 ; *Johnson v. Gaines*, 8 Ala. 791 ; *Willis' Adm'r v. Willis' Heirs*, 9 Ala. 330 ; *Kirkman, Abernathy & Hanna v. Benham*, 28 Ala. 501. The above allegation of this bill, in this case, is sustained by the proofs.

The proceeding here was not under the *ninety-fourth* section of the act of incorporation above cited, and it can not be helped by it. And that section, so far as it applies to the action of the city authorities in this case, is also vicious to the same extent with section fifty-eight, and for the same reasons.—Pamph. Acts 1865-6, p. 233, § 94 ; Const. Ala. 1868, Art. XIII, § 16.

The decree of the chancellor in the court below is affirmed, with costs in this court and in the court below.